VOLUME   1

PAGES  1 - 244

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                                      )<br>            PLAINTIFF,         )<br>                                      )<br>   VS.                                )<br>                                      )<br>SHARON LEE CAULDER,        )<br>                                      )<br>            DEFENDANT.         )<br>_____) | **CERTIFIED COPY**<br><br>NO. CR-04-40016 CW<br><br>MONDAY, NOVEMBER 14, 2005<br><br>OAKLAND, CALIFORNIA |

<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

<u>APPEARANCES:</u>

FOR PLAINTIFF:              KEVIN R. RYAN,
                                    UNITED STATES ATTORNEY
                                    1301 CLAY STREEET
                                    OAKLAND, CALIFORNIA   94612
                       BY:  **MERRY JEAN CHAN,**
                              **LEWIS A. DAVIS,**
                              **ASSISTANT UNITED STATES ATTORNEYS**


FOR DEFENDANT:            BARRY PORTMAN,
                                    FEDERAL PUBLIC DEFENDER
                                    555 12TH STREET, SUITE 650
                                    OAKLAND, CALIFORNIA 94607
                       BY:  **REBECCA SILBERT,**
                              **DANIEL BLANK,**
                              **ASSISTANT FEDERAL PUBLIC DEFENDERS**


REPORTED BY:               **DIANE E. SKILLMAN, CSR 4909, RPR, FCRR**
                              **OFFICIAL COURT REPORTER**

1    IF EVERYONE WILL PLEASE STAND AND RAISE YOUR RIGHT HAND.

2            (PROSPECTIVE JURORS SWORN.)

3        **PROSPECTIVE JUROR:**  I DO.

4        **THE CLERK:**  PLEASE BE SEATED.

5            (PROCEEDINGS HELD IN THE PRESENCE OF THE COURT.)

6        **THE COURT:**  PLEASE BE SEATED.

7        LADIES AND GENTLEMEN, GOOD MORNING.

8            YOU HAVE BEEN CALLED AS PROSPECTIVE JURORS IN A

9    FEDERAL CRIMINAL CASE.  IN A MOMENT I WILL BE ASKING YOU SOME

10   QUESTIONS IN ORDER TO ALLOW THE PARTIES AND MYSELF TO SELECT A

11   FAIR AND IMPARTIAL JURY TO TRY THE CASE.

12           I WILL BE ASKING SOME OF THOSE QUESTIONS OF YOU AS A

13   WHOLE AND ASKING YOU TO RAISE YOUR HAND IF YOU HAVE A "YES"

14   ANSWER, AND OTHER QUESTIONS I WILL BE ASKING OF YOU

15   INDIVIDUALLY, OR THE ATTORNEYS MAY BE ASKING OF YOU

16   INDIVIDUALLY.

17           MY FIRST QUESTION IS GOING TO BE WHETHER ANY OF YOU

18   ARE ACQUAINTED WITH ANY OF THE PARTIES IN THE CASE OR ANY OF

19   THE ATTORNEYS, ANY OF THE INVESTIGATORS, PEOPLE WHO MIGHT BE

20   SITTING IN DURING THE TRIAL.

21           TO DO THAT, I WILL ASK THE CLERK TO CALL THE TITLE

22   OF THE CASE AND ASK THE ATTORNEYS TO STATE THEIR APPEARANCES.

23   WHEN THEY DO THAT, THEY WILL INTRODUCE THEMSELVES TO YOU AND

24   INTRODUCE THE PEOPLE AT THEIR TABLE AND ANYONE ELSE IN THE

25   COURTROOM WHO MIGHT BE PARTICIPATING.

1      SHEILAH, WILL YOU CALL THE CASE?

2          **THE CLERK:**  CALLING THE MATTER OF UNITED STATES OF

3  AMERICA VERSUS SHARON LEE CAULDER.  CRIMINAL ACTION NUMBER

4  CR-04-40016 CW.

5          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

6  RECORD.

7          **MS. CHAN:**  MARY JEAN CHAN ON BEHALF OF THE UNITED

8  STATES.

9          **MR. DAVIS:**  LEW DAVIS FOR THE UNITED STATES.

10          **MS. CHAN:**  SEATED AT COUNSEL TABLE IS BILL LEONI OF

11  THE FBI.  SEATED AT THE COUNSEL TABLE DURING THE TRIAL WILL

12  ALSO BE MAYA RAICHBART OF THE IRS.

13          **MS. SILBERT:**  REBECCA SILBERT, ASSISTANT FEDERAL

14  PUBLIC DEFENDER AND DAN BLANK ALSO AN ASSISTANT FEDERAL PUBLIC

15  DEFENDER, AND THIS IS SHARON LEE CAULDER.

16          **THE COURT:**  ALL RIGHT.  SO ARE ANY OF YOU ACQUAINTED

17  WITH ANY OF THESE PEOPLE OR HEARD OF THEM IN THE PAST IN ANY

18  WAY?  RAISE YOUR HAND IF YOU ARE.

19          ALL RIGHT.  I DON'T SEE ANY HANDS.

20          LET ME TELL YOU A LITTLE BIT ABOUT THE SCHEDULE THAT

21  WE WILL BE USING FOR THE CASE.  THIS TRIAL SHOULD NOT BE A

22  PARTICULARLY LONG ONE.  WE WILL BE IN SESSION GENERALLY MONDAY

23  THROUGH THURSDAY, ALTHOUGH OCCASIONALLY WE WILL BE IN SESSION

24  ON A FRIDAY.  OUR TIME SCHEDULE WILL BE 8:30 UNTIL 1:30 EACH

25  DAY.  WE DON'T TAKE A LUNCH BREAK, INSTEAD WE TAKE TWO,

1    DIRE.  AS I MENTIONED, I WILL BE ASKING YOU SOME GENERAL

2    QUESTIONS OF ALL OF YOU, AND THE ATTORNEYS WILL BE ASKING YOU

3    SOME QUESTIONS AS WELL.

4         YOU'VE ALSO ANSWERED QUESTIONS IN WRITING ON YOUR

5    QUESTIONNAIRE.  ALL OF THESE QUESTIONS ON THE QUESTIONNAIRE AND

6    THE ONES THAT YOU WILL BE ANSWERING VERBALLY ARE ANSWERED UNDER

7    PENALTY OF PERJURY.  SO IF WHEN WE ARE QUESTIONING YOU, IF IT

8    OCCURS TO YOU YOU HAVE FORGOTTEN SOMETHING OR MISSTATED

9    SOMETHING ON YOUR WRITTEN QUESTIONNAIRE, BE SURE TO BRING THAT

10   TO MY ATTENTION.

11        WE ARE NOT ASKING YOU THESE QUESTIONS TO TRY TO

12   EMBARRASS YOU OR ASK YOU TO DISCUSS PRIVATE MATTERS IN FRONT OF

13   OTHER PEOPLE.  WE NEED ONLY TO FIND OUT CERTAIN THINGS ABOUT

14   YOUR BACKGROUND SO THAT WE CAN CHOOSE A FAIR AND IMPARTIAL

15   JURY.

16        IT IS IMPORTANT THAT YOU ANSWER THE QUESTIONS.  IF

17   YOU FIND A QUESTION CALLING FOR SOMETHING THAT IS PRIVATE THAT

18   YOU DON'T WISH TO TALK ABOUT IN FRONT OF A LARGE GROUP, YOU CAN

19   LET US KNOW THAT AND WE'LL ARRANGE TO ASK YOU SOME OF THOSE

20   MORE PRIVATE QUESTIONS WITHOUT THE PRESENCE OF THE OTHERS IF

21   THAT'S NECESSARY.  BUT BE SURE TO ASK AND DON'T JUST OMIT

22   SOMETHING THAT IS ANSWERING THE QUESTION.

23        THIS CASE, AS I MENTIONED, IS A CRIMINAL CASE.  IT

24   INVOLVES TWO COUNTS OF CONCEALING ASSETS IN CONNECTION WITH A

25   BANKRUPTCY PROCEEDING IN VIOLATION OF TITLE 18, UNITED STATES

1    CODE, SECTION 15 -- I'M SORRY, SECTION 152(1), AND FIVE

2    MISDEMEANOR COUNTS OF WILLFULLY FAILING TO FILE TAX RETURNS IN

3    VIOLATION OF 26, UNITED STATES CODE, SECTION 7203.

4           I AM GOING TO MENTION THE NAMES OF SOME OF THE

5    PEOPLE WHO MAY BE CALLED AS WITNESSES IN THE CASE OR SOME OF

6    THE PEOPLE WHO MAY NOT BE CALLED, BUT WHOSE NAMES MAY COME UP

7    OR BE MENTIONED IN CONNECTION WITH THE CASE. I WOULD LIKE YOU

8    TO LISTEN TO THE NAMES AND LET ME KNOW IF ANY OF YOU ARE

9    ACQUAINTED WITH ANY OF THESE PEOPLE. IF THE NAME SOUNDS

10   FAMILIAR BUT YOU ARE NOT SURE IT IS THE PERSON YOU KNOW, RAISE

11   YOUR HAND AND WE WILL TELL YOU A LITTLE MORE ABOUT THE PERSON

12   SO YOU CAN IDENTIFY IF THAT'S THE RIGHT PERSON.

13          THE NAMES ARE THE ONES THAT HAVE BEEN MENTIONED SO

14   FAR, THE TWO YOU WERE INTRODUCED, JOSEPH CAMILLUCCI, BILL LEONI

15   I GUESS WAS INTRODUCED, TIM MATHERS, MICHAEL DE LA CRUZ, MARTHA

16   SPERRY, GABRIELA CHAZARO, ERIK FRANKWICH, LISA FERNANDEZ, MARC

17   KRIGUER, JACQUIE KRIGUER, MICHAEL CALLAGHAN, SANDRA SCHOTT

18   BURKE, DENNIS CRITESER, EUN YOUNG LEE, MARK SPILKER, STEPHEN

19   KASLIKOWSKI, DAN BRACE, HEIDI LYONS.

20          I WILL MENTION SOME COMPANIES AS WELL. LLEWELLYN

21   PUBLICATIONS, DIANA BERNARD, THE EQUITABLE LIFE ASSURANCE

22   SOCIETY. IF YOU HAVE INSURANCE WITH THAT COMPANY AND NO

23   PARTICULAR PERSONAL RELATIONSHIP, YOU DON'T NEED TO TELL ME

24   ABOUT IT. MONARCH LIFE INSURANCE, BANK OF AMERICA. AGAIN, IF

25   YOU'VE HAD SOME PARTICULAR RELATION, LET ME KNOW. IF YOU JUST

1    HAVE A CHECKING ACCOUNT THERE, I DON'T CARE.  EMMETT LARKIN

2    SECURITIES COMPANY, FIRST AMERICAN TITLE COMPANY, WORLD

3    SAVINGS, FIRST PLATINUM, STEAD MOTORS, RICHARD SPEAR, CLAUDE

4    AMES, JOHN GODINO, LEE HOGINSKI, JUDY MARTIN, THE PACIFICA

5    GRADUATE INSTITUTE, ELIN HANSEN, LINDSAY HASSELL, THE OPEN

6    EXCHANGE MAGAZINE, THE BARBARA BRENNAN SCHOOL OF HEALING,

7    MINNIE LOO, CHARLES TONNA, GEORGE WILLIAMS, VANESSA MAXWELL,

8    VANESSA JONES, SHARON COOK, NICOLAI LEVASHOV.

9         HAVE I MISSED ANYONE?  THERE WAS I THINK ONE OTHER

10   NAME FROM THAT MAGAZINE?

11        **MS. CHAN:**  BART BRODSKY.

12        **THE COURT:**  WAS THERE ONE OTHER NAME, A CUSTODIAN

13   WHOSE NAME HASN'T BEEN MENTIONED EARLIER?  I CAN'T FIND THAT

14   LIST.

15        **MS. CHAN:**  I DON'T BELIEVE SO, YOUR HONOR.

16        **THE COURT:**  ANY NAMES I HAVE MISSED?

17        **MS. CHAN:**  I DO NOT BELIEVE SO EXCEPT PATRICIA

18   LASUSKY FROM BANK OF AMERICA.

19        **THE COURT:**  THAT WAS THE ONE I WAS THINKING OF.

20        ANY NAMES I HAVE MISSED, MS. SILBERT?

21        **MS. SILBERT:**  NO, YOUR HONOR.

22        **THE COURT:**  IS ANYONE ACQUAINTED WITH ANY OF THOSE

23   PEOPLE, RAISE YOUR HAND.

24        YES, SIR.

25        **PROSPECTIVE JUROR MAHER:**  I AM A BANKRUPTCY LAWYER.

1          (NO RESPONSE.)

2          LET ME JUST ADD, TOO, THAT ALTHOUGH MANY PEOPLE

3    DON'T WISH TO SERVE ON JURIES, I SPEAK WITH ALL OF THEM AFTER

4    THEY HAVE SERVED, AND I WILL SAY THAT MOST PEOPLE AFTERWARDS

5    FIND THAT IT HAS BEEN A VERY, VERY INTERESTING AND ENLIGHTENING

6    EXPERIENCE TO SERVE AS A JUROR.  SO, IF YOU HAVE THE

7    OPPORTUNITY, I THINK YOU'LL FIND IN THE END THAT IT IS A VERY

8    REWARDING EXPERIENCE.

9          ALL RIGHT.  AT THIS TIME I AM GOING TO ASK THE

10   ATTORNEYS IF THEY HAVE QUESTIONS THEY WANT TO ASK.  THEY WILL

11   PROBABLY ASK YOU INDIVIDUALLY.

12         AND THERE IS A MICROPHONE THERE RIGHT IN FRONT OF

13   MR. WONG.  IF YOU WANT TO GRAB THAT.  AND THEN WE WILL TAKE

14   THAT BOX OFF OF THERE AND PASS IT DOWN AS QUESTIONS COME UP.

15         I DON'T KNOW IF THE TWO OF YOU HAVE WORKED OUT WHO

16   WISHES TO GO FIRST.

17         **MS. CHAN:**  I THINK I WILL GO FIRST, YOUR HONOR.

18         **THE COURT:**  OKAY.

19         **MS. CHAN:**  GOOD MORNING, MR. WONG.

20         **PROSPECTIVE JUROR WONG:**  GOOD MORNING.

21         **MS. CHAN:**  I HAVE A FEW QUESTIONS FOR YOU.  THE

22   FIRST ONE IS, DO YOU OR ANYBODY THAT YOU KNOW OF, ARE THEY

23   CLOSE TO OFFICERS OR SPECIAL AGENTS OF LAW ENFORCEMENT

24   AGENCIES, SUCH AS THE FBI OR THE INTERNAL REVENUE SERVICE?

25         **PROSPECTIVE JUROR WONG:**  LIKE LAW ENFORCEMENT PEACE

1  OFFICER?  WOULD THAT BE INCLUDED?

2           **MS. CHAN:**  THAT WOULD BE INCLUDED, YES.

3           **PROSPECTIVE JUROR WONG:**  ONE OF MY RELATIVES,

4  SIBLINGS.

5           **MS. CHAN:**  ONE OF YOUR SIBLINGS?

6           **PROSPECTIVE JUROR WONG:**  YES.

7           **MS. CHAN:**  AND HAVE YOU EVER YOURSELF WORKED AS A

8  LAW ENFORCEMENT OFFICER?

9           **PROSPECTIVE JUROR WONG:**  NO.

10          **MS. CHAN:**  DO YOU THINK THAT A LAW ENFORCEMENT

11 OFFICER IS EITHER MORE LIKELY OR LESS LIKELY TO TELL THE TRUTH

12 THAN A WITNESS WITH A DIFFERENT OCCUPATION BECAUSE OF HIS OR

13 HER OCCUPATION?

14          **PROSPECTIVE JUROR WONG:**  NO.

15          COULD YOU REPEAT THE QUESTION?  I DON'T QUITE

16 UNDERSTAND.

17          **MS. CHAN:**  SURE.

18          DO YOU BELIEVE THAT THE FACT OF SOMEBODY BEING A LAW

19 ENFORCEMENT OFFICER MAKES IT MORE LIKELY OR LESS LIKELY FOR

20 THEM TO TELL THE TRUTH?

21          **PROSPECTIVE JUROR WONG:**  MORE LIKELY TO TELL THE

22 TRUTH.

23          **MS. CHAN:**  MORE LIKELY TO TELL THE TRUTH?  IF THE

24 COURT INSTRUCTS YOU THAT YOU ARE ONLY TO CONSIDER THE TESTIMONY

25 OF ALL THE WITNESSES INDIVIDUALLY BY THE SAME STANDARDS, WOULD

1    YOU BE ABLE TO SET THAT FEELING ASIDE AND FOLLOW THAT

2    INSTRUCTION?

3            **PROSPECTIVE JUROR WONG:**  YES.

4        **MS. CHAN:**  HAVE YOU EVER SERVED IN THE MILITARY?

5            **PROSPECTIVE JUROR WONG:**  NO.

6        **MS. CHAN:**  HAVE YOU OR A CLOSE RELATIVE OR FRIEND

7    BEEN A VICTIM OR WITNESS TO A CRIME?

8            **PROSPECTIVE JUROR WONG:**  NO, NOT TO MY KNOWLEDGE.

9        **MS. CHAN:**  OKAY.  HAVE YOU OR ANY RELATIVE OR CLOSE

10   PERSONAL FRIEND EVER BEEN ACCUSED, ARRESTED OR CONVICTED OF ANY

11   OFFENSE?

12           **PROSPECTIVE JUROR WONG:**  NOT TO MY KNOWLEDGE.

13       **MS. CHAN:**  OKAY.  WHAT ABOUT HAVING A BAD EXPERIENCE

14   WITH COURT, OR WITH LAW ENFORCEMENT, OR WITH THE FEDERAL

15   GOVERNMENT?

16           **PROSPECTIVE JUROR WONG:**  NO EXPERIENCE.

17       **MS. CHAN:**  HAVE YOU OR ANY CLOSE FRIEND OR FAMILY

18   MEMBER EVER FILED FOR BANKRUPTCY?

19           **PROSPECTIVE JUROR WONG:**  NO.

20       **MS. CHAN:**  HAVE YOU EVER BEEN AUDITED OR HAD ANY

21   EXPERIENCES WITH THE INTERNAL REVENUE SERVICE OR THE STATE OR

22   LOCAL TAX COLLECTION AGENCIES?

23           **PROSPECTIVE JUROR WONG:**  NO.

24       **MS. CHAN:**  DO YOU UNDERSTAND THE PRINCIPLES THAT A

25   DEFENDANT IN A CRIMINAL CASE IS PRESUMED TO BE INNOCENT UNLESS

1   PROVEN GUILTY AND THE BURDEN OF PROOF IS UPON THE GOVERNMENT TO

2   PROVE GUILT BEYOND A REASONABLE DOUBT BEFORE THERE CAN BE A

3   CONVICTION?

4           PROSPECTIVE JUROR WONG:   YES, I DO.

5           MS. CHAN:   DO YOU AGREE OR DISAGREE WITH THOSE

6   PRINCIPLES?

7           PROSPECTIVE JUROR WONG:   I AGREE WITH THOSE

8   PRINCIPLES.

9           MS. CHAN:   BECAUSE THE DEFENDANT IS PRESUMED

10  INNOCENT AND THE BURDEN OF PROOF IS ON THE GOVERNMENT TO PROVE

11  GUILT BEYOND A REASONABLE DOUBT, THE DEFENDANT NEED NOT TESTIFY

12  OR PRESENT ANY WITNESSES OR EVIDENCE.   IN FACT, THE DEFENDANT

13  HAS A CONSTITUTIONAL RIGHT NOT TO TESTIFY; TO RELY UPON THE

14  PRESUMPTION OF INNOCENCE.

15          WILL YOU BE ABLE TO GIVE THE DEFENDANT THE BENEFIT

16  OF THE PRESUMPTION OF INNOCENCE IF SHE EXERCISES HER

17  CONSTITUTIONAL RIGHT NOT TO TESTIFY?

18          PROSPECTIVE JUROR WONG:   YES.

19          MS. CHAN:   WILL YOU BE ABLE TO FOLLOW THE LAW AS THE

20  COURT GIVES IT TO YOU EVEN IF YOU DISAGREE WITH IT OR THINK IT

21  SHOULD BE DIFFERENT?

22          PROSPECTIVE JUROR WONG:   YES.

23          MS. CHAN:   HAVING HEARD THESE QUESTIONS AND THE

24  RESPONSES GIVEN SO FAR, CAN YOU THINK OF ANYTHING ABOUT THE

25  NATURE OF THIS CASE THAT WILL MAKE IT DIFFICULT FOR YOU TO BE A

JUROR?

      **PROSPECTIVE JUROR WONG:**  PROBABLY MY PREVIOUS --
ACTUALLY MY CURRENT OCCUPATION.

      **MS. CHAN:**  WHAT IS THAT?

      **PROSPECTIVE JUROR WONG:**  I AM A SENIOR ANALYST, SO I
DO WORK FOR THE FEW AUDITORS OUT THERE WHO AUDIT THE EMPLOYEE'S
RECORDS.  THEY SEND THEM IN, I REVIEW THEM FOR ANY
IRREGULARITIES, POSSIBLE FRAUD.  AND IF NONE, WHICH IS MOSTLY
THE CASE, I SEND THEM ON TO HAVE THEM BILLED.

      **MS. CHAN:**  HOW WOULD THAT MAKE IT DIFFICULT FOR YOU
TO BE A JUROR IN THIS CASE?

      **PROSPECTIVE JUROR WONG:**  I GUESS NOT BECAUSE I WOULD
BE IMPARTIAL.  I THOUGHT THAT WOULD BE -- I JUST WANTED YOU TO
KNOW THAT.

      **MS. CHAN:**  THANK YOU VERY MUCH.

      DO YOU HAVE ANY QUESTIONS, MS. SILBERT?

      **MS. SILBERT:**  MR. WONG, I HAVE ONE.

      YOU SAID SOMEONE WORKED IN LAW ENFORCEMENT.  WHICH
LAW ENFORCEMENT AGENCY IS THAT?

      **PROSPECTIVE JUROR WONG:**  THAT WOULD BE THE SAN
FRANCISCO PD.

      **MS. SILBERT:**  AND I APOLOGIZE, WHICH RELATIVE, CLOSE
OR NOT CLOSE?

      **PROSPECTIVE JUROR WONG:**  THAT WOULD BE MY BABY
SISTER.

1      **MS. SILBERT:** ANOTHER QUESTION. THE GOVERNMENT

2  ATTORNEY, MS. CHAN, ASKED YOU ABOUT A LAW ENFORCEMENT OFFICER

3  AND TELLING THE TRUTH. I BELIEVE YOU SAID YOU THOUGHT IT WAS

4  PERHAPS MORE LIKELY.

5          I WANT TO FOLLOW UP ON THAT. YOU UNDERSTAND THAT

6  THE DEFENDANT IS PRESUMED INNOCENT IN A CRIMINAL CASE?

7          **PROSPECTIVE JUROR WONG:** RIGHT.

8      **MS. SILBERT:** AND THE DEFENDANT COULD DO NOTHING,

9  PUT ON NO CASE AT ALL AND IF THE GOVERNMENT HAD NOT PROVED

10  THEIR CASE, YOU WOULD BE REQUIRED TO RETURN A VERDICT OF NOT

11  GUILTY. DO YOU UNDERSTAND THAT?

12          **PROSPECTIVE JUROR WONG:** I DO.

13      **MS. SILBERT:** IF THERE IS A CONFLICT IN TESTIMONY

14  BETWEEN A LAW ENFORCEMENT OFFICER AND A PERSON WHO IS NOT A LAW

15  ENFORCEMENT OFFICER, DO YOU AGREE THAT THE FACT THE ONE PERSON

16  IS A LAW ENFORCEMENT OFFICER HAS NO BEARING ON WHETHER THEY OR

17  THE OTHER PERSON IS TELLING THE TRUTH?

18          **PROSPECTIVE JUROR WONG:** LET ME UNDERSTAND THIS. IT

19  IS MAINLY ONE WORD AGAINST THE OTHER, PRETTY MUCH.

20      **MS. SILBERT:** IF THERE WERE A SITUATION WHERE ONE

21  WAS AGAINST THE OTHER, AND ONE PERSON WAS A LAW ENFORCEMENT

22  OFFICER, WOULD YOU HAVE TROUBLE BECAUSE ONE OF THE PEOPLE WAS A

23  LAW ENFORCEMENT OFFICER, WOULD YOU BE MORE INCLINED TO GIVE

24  THAT PERSON THE BENEFIT OF THE DOUBT, OR BECAUSE OF THEIR JOB,

25  FIND THAT THE LAW ENFORCEMENT WAS TELLING THE TRUTH?

1    **PROSPECTIVE JUROR WONG:**  I MIGHT HAVE A LITTLE

2   PROBLEM WITH THAT.  I WOULD TEND TO BE A LITTLE BIAS.

3          **THE COURT:**  DO EITHER OF YOU HAVE ANY QUESTIONS FOR

4   ANY OF THE OTHER JURORS?

5          **MS. SILBERT:**  I BELIEVE MS. CHAN --

6          **MS. CHAN:**  YES, YOUR HONOR.

7          ONE MOMENT, PLEASE.

8          (PAUSE IN THE PROCEEDINGS.)

9          **MS. CHAN:**  MR. LE?

10          **PROSPECTIVE JUROR LE:**  YES.

11          **MS. CHAN:**  MR. LE OR LE?

12          **PROSPECTIVE JUROR LE:**  LE.  GOOD MORNING.

13          **MS. CHAN:**  DO YOU OR ANYBODY YOU KNOW WHO'S CLOSE TO

14   YOU, KNOW OF ANY OFFICERS OR SPECIAL AGENTS OF THE FBI OR THE

15   IRS?

16          **PROSPECTIVE JUROR LE:**  YES.

17          **MS. CHAN:**  WHO?

18          **PROSPECTIVE JUROR LE:**  IT'S MY SISTER-IN-LAW'S

19   HUSBAND.

20          **MS. CHAN:**  YOUR SISTER-IN-LAW'S HUSBAND IS?

21          **PROSPECTIVE JUROR LE:**  OFFICER, LIEUTENANT IN SAN

22   LEANDRO.  HE'S A POLICEMAN.

23          **MS. CHAN:**  FOR WHAT AGENCY?

24          **PROSPECTIVE JUROR LE:**  POLICE.

25          **MS. CHAN:**  IN WHAT COUNTY?

1    **MS. CHAN:**  AND HAVING HEARD ALL OF THESE QUESTIONS

2    AND RESPONSES, IS THERE ANYTHING THAT YOU CAN THINK OF THAT

3    WOULD MAKE IT DIFFICULT FOR YOU TO SERVE AS A JUROR ON THIS

4    CASE?

5        **PROSPECTIVE JUROR LE:**  IT'S NOT REALLY DIFFICULT,

6    BUT I WANT YOU TO BE AWARE, I HAVE SLEEP APNEA.  SO IF I SLEEP

7    IN A DAY ABOUT TWO HOURS, I AM NOT CONCENTRATE, I MAY FALL

8    ASLEEP.  SO I JUST WANT YOU TO BE AWARE.

9        **MS. CHAN:**  THANK YOU VERY MUCH FOR LETTING US KNOW

10   ABOUT THAT.

11        MS. SILBERT?

12        **MS. SILBERT:**  I WOULD LIKE TO ASK A QUESTION NOT ON

13   THE LIST ABOUT LANGUAGE.

14        **THE COURT:**  OKAY.

15        **MS. SILBERT:**  MR. LE, I CAN SEE YOU SPEAK TWO

16   LANGUAGES.  DO YOU -- I DON'T KNOW -- THE WITNESSES IN THIS

17   CASE WILL ALL BE SPEAKING IN ENGLISH.  DO YOU ANTICIPATE YOU

18   WOULD HAVE ANY DIFFICULTY IN UNDERSTANDING ANY OF THE

19   TESTIMONY?

20        **PROSPECTIVE JUROR LE:**  MAYBE SOME WORDING I MAY HAVE

21   DIFFICULTY, BUT MY WORRY IS I HAVE PHYSICAL PROBLEM.  MY

22   THROAT.  MY ACCENT, IT'S VERY HEAVY.  I HAVE OPERATION ON MY

23   THROAT.

24        **MS. SILBERT:**  DO YOU FEEL THAT YOU'RE UNDERSTANDING

25   ENGLISH WHEN THE WITNESSES ARE SPEAKING IS FLUENT?

1    **PROSPECTIVE JUROR LE:**  SO FAR OKAY, BUT SOME WORDING

2    I MAY HAVE DIFFICULT.

3        **MS. SILBERT:**  THANK YOU.

4        **THE COURT:**  DOES SOMEBODY HAVE A CELL PHONE ON OR

5    SOME SORT OF ELECTRONIC DEVICE THAT IS MAKING NOISE?

6        **THE DEFENDANT:**  I JUST TURNED MINE OFF.

7        **THE COURT:**  OKAY.

8        **MS. CHAN:**  GOOD MORNING, MR. BENSON.

9        **PROSPECTIVE JUROR BENSON:**  GOOD MORNING.

10        **MS. CHAN:**  DO YOU OR DOES ANYBODY CLOSE TO YOU KNOW

11    ANY OFFICER, OR SPECIAL AGENT IN LAW ENFORCEMENT, FOR EXAMPLE,

12    THE FBI OR THE IRS?

13        **PROSPECTIVE JUROR BENSON:**  NO.

14        **MS. CHAN:**  HAVE YOU YOURSELF EVER WORKED AS A LAW

15    ENFORCEMENT.

16        **PROSPECTIVE JUROR BENSON:**  NO.

17        **MS. CHAN:**  DO YOU THINK THAT A LAW ENFORCEMENT

18    OFFICER IS EITHER MORE LIKELY OR LESS LIKELY TO TELL THE TRUTH

19    BECAUSE OF HIS OR HER OCCUPATION?

20        **PROSPECTIVE JUROR BENSON:**  I'D LIKE TO THINK YES.

21        **MS. CHAN:**  IF THE COURT INSTRUCTS YOU THAT YOU ARE

22    TO CONSIDER THE TESTIMONY OF A LAW ENFORCEMENT OFFICER EQUAL

23    TO -- THE SAME WAY THAT YOU WOULD CONSIDER THE TESTIMONY OF ANY

24    OTHER WITNESS BY THE SAME STANDARD, WOULD YOU BE ABLE TO SET

25    ASIDE THAT FEELING OR THAT HOPE AND FOLLOW THE INSTRUCTIONS?

1      **MS. CHAN:**  DO YOU FEEL THAT YOUR WIFE WAS TREATED

2  FAIRLY IN THE BANKRUPTCY PROCEEDING?

3      **PROSPECTIVE JUROR BENSON:**  TO MY KNOWLEDGE.

4      **MS. CHAN:**  OKAY.  BECAUSE THE DEFENDANT IS PRESUMED

5  INNOCENT AND THE BURDEN OF PROOF IS ON THE GOVERNMENT TO PROVE

6  GUILT BEYOND A REASONABLE DOUBT, THE DEFENDANT NEED NOT TESTIFY

7  OR PUT ON ANY EVIDENCE.

8      IF THE DEFENDANT WERE TO TAKE ADVANTAGE OF THAT

9  CONSTITUTIONAL RIGHT NOT TO TESTIFY; TO RELY UPON THE

10  PRESUMPTION OF INNOCENCE, WOULD YOU BE ABLE TO GIVE THAT

11  DEFENDANT THE PRESUMPTION OF INNOCENCE?

12      **PROSPECTIVE JUROR BENSON:**  YES.

13      **MS. CHAN:**  WILL YOU BE ABLE TO FOLLOW THE LAW AS THE

14  COURT GIVES IT TO YOU EVEN IF YOU DISAGREE WITH IT OR THINK IT

15  SHOULD BE DIFFERENT?

16      **PROSPECTIVE JUROR BENSON:**  YES.

17      **MS. CHAN:**  HAVING HEARD THESE QUESTIONS AND

18  RESPONSES SO FAR, IS THERE ANYTHING THAT YOU CAN THINK OF THAT

19  WOULD MAKE IT DIFFICULT FOR YOU TO BE FAIR IN THIS -- OR TO BE

20  A JUROR?

21      **PROSPECTIVE JUROR BENSON:**  NO.

22      **MS. CHAN:**  MS. SILBERT?

23      **MS. SILBERT:**  GOOD MORNING, MR. BENSON.  THANK YOU.

24  I MAY HAVE MISHEARD.  DID YOU SAY THAT YOU WOULD LIKE TO THINK

25  THAT A LAW ENFORCEMENT OFFICER IS MORE LIKELY TO TELL THE

1  TRUTH?

2           **PROSPECTIVE JUROR BENSON:**  YES.

3           **MS. SILBERT:**  CAN YOU EXPLAIN WHAT YOU MEAN BY THAT?

4           **PROSPECTIVE JUROR BENSON:**  I AM TRUSTING OF THEM IN

5  THEIR POSITION TO UPHOLD THE LAW SO, THEREFORE, I WOULD THINK

6  TEND TO BE MORE HONEST.

7           **MS. SILBERT:**  DO YOU UNDERSTAND THAT THE GOVERNMENT

8  HAS THE BURDEN OF PROOF IN THIS CASE?

9           **PROSPECTIVE JUROR BENSON:**  YES.

10          **MS. SILBERT:**  THAT THE DEFENDANT DOESN'T HAVE TO

11 GIVE ANY EVIDENCE WHATSOEVER?

12          **PROSPECTIVE JUROR BENSON:**  CORRECT.

13          **MS. SILBERT:**  BUT THAT THE FACT THAT THE GOVERNMENT

14 IS THE GOVERNMENT, HAS NO BEARING ON WHETHER ANY OF THEIR

15 WITNESSES ARE MORE LIKELY TO TELL THE TRUTH THAN ANYONE ELSE.

16          **PROSPECTIVE JUROR BENSON:**  CORRECT.

17          **MS. SILBERT:**  THAT SEEMS TO CONTRADICT, I AM SORRY,

18 WHAT YOU SAID EARLIER.  DO YOU FEEL THAT YOU HAVE ANY BIAS IN

19 FAVOR OF THE GOVERNMENT BECAUSE THEY ARE THE GOVERNMENT?

20          **PROSPECTIVE JUROR BENSON:**  NO.

21          **MS. SILBERT:**  DO YOU FEEL THAT YOU WOULD BE ABLE TO

22 LISTEN TO ALL THE WITNESSES AND NOT GIVE THEM ANY MORE CREDENCE

23 THAN ANOTHER WITNESS IF A WITNESS IS ON THE GOVERNMENT'S SIDE?

24          **PROSPECTIVE JUROR BENSON:**  YES.

25          **MS. SILBERT:**  THANK YOU.

1        **PROSPECTIVE JUROR MIRTO:**  FINANCIALLY TO ME AND MY

2   COMPANY.

3        **MS. CHAN:**  WHAT IS YOUR COMPANY?

4        **PROSPECTIVE JUROR MIRTO:**  I WORK FOR A SMALL

5   COMPANY.  I DO ALL THE PURCHASING AND ARRANGEMENTS.  SO IF I AM

6   NOT THERE, THE NIGHT PEOPLE DON'T GET THEIR MATERIALS.

7        **MS. CHAN:**  I SEE.

8        MS. SILBERT, ANY QUESTIONS?

9        **MS. SILBERT:**  MR. MIRTO, YOU SAID YOU DON'T TRUST

10  THE POLICE.  IF THE JUDGE INSTRUCTED YOU AS TO THE LAW IN THIS

11  CASE, WOULD YOU BE ABLE TO APPLY THE LAW FAIRLY?

12       **PROSPECTIVE JUROR MIRTO:**  DON'T MATTER.

13       **MS. SILBERT:**  WOULD YOU BE ABLE TO DELIBERATE IN

14  THIS CASE WITHOUT BIAS?

15       **PROSPECTIVE JUROR MIRTO:**  PROBABLY NOT.

16       **MS. SILBERT:**  IS THERE SOMETHING THE JUDGE COULD SAY

17  THAT WOULD --

18       **PROSPECTIVE JUROR MIRTO:**  NO, THERE IS NOTHING

19  ANYBODY COULD SAY.

20       **MS. CHAN:**  THANK YOU.

21       GOOD MORNING, MR. LARKINS.

22       **PROSPECTIVE JUROR LARKINS:**  GOOD MORNING.

23       **MS. CHAN:**  DO YOU KNOW --

24       **THE COURT:**  I AM SORRY.

25       MR. MIRTO, YOU'VE SAID YOU DON'T TRUST THE POLICE.

1    BAD.

2              **MS. CHAN:**  I AM SORRY.

3              **PROSPECTIVE JUROR LARKINS:**  THANK YOU.

4              **MS. CHAN:**  MS. SILBERT?

5              **MS. SILBERT:**  MR. LARKINS, WOULD YOU BE ABLE TO

6    WORK -- IF COURT FINISHES AT 1:30, WOULD YOU BE ABLE TO WORK IN

7    THE AFTERNOON OR EVENING?

8              **PROSPECTIVE JUROR LARKINS:**  I AM NOT SURE, MA'AM,

9    BECAUSE TRAFFIC WISE AND STUFF, I DON'T KNOW IF THEY WOULD LET

10   ME SWAP THE SHIFTS AND BE ABLE TO.  I DON'T THINK I WILL BE

11   ABLE TO MAKE IT THERE ON TIME, THE TRAFFIC.  I LIVE IN SONOMA

12   COUNTY FROM HERE.

13             **MS. SILBERT:**  YOU SPOKE ABOUT SOME FEELINGS ABOUT

14   THE TAX PEOPLE AND SOME EXPERIENCES THAT YOU HAD WITH CRIMINAL

15   DEFENDANTS.

16             WOULD ANY OF THOSE FEELINGS CAUSE YOU TO BE BIASED

17   DURING JURY DELIBERATIONS OR DO YOU THINK YOU CAN REVIEW THE

18   EVIDENCE FAIRLY AND DELIBERATE FAIRLY IF THE JUDGE INSTRUCTED

19   YOU TO DO SO?

20             **PROSPECTIVE JUROR LARKINS:**  I DON'T KNOW IF I CAN BE

21   HONEST WITH THAT OR NOT, BECAUSE OF PAST PROBLEMS THAT I HAVE

22·  HAD MYSELF.  I AM NOT SURE ABOUT THAT.

23             **MS. SILBERT:**  DO YOU FEEL THAT YOU HAVE ANY BIAS FOR

24   OR AGAINST CRIMINAL DEFENDANTS BECAUSE OF YOUR EXPERIENCE IN

25   THESE CASES?

1          **PROSPECTIVE JUROR LARKINS:**  I AM NOT SURE ON THAT.

2          **THE COURT:**  SIR, YOU SAID YOU WORK AS A SECURITY

3   GUARD OFF AND ON.  ARE YOU CURRENTLY WORKING?

4          **PROSPECTIVE JUROR LARKINS:**  YES, MA'AM.  I HAVE BEEN

5   THERE ABOUT SEVEN MONTHS.  I HAVEN'T BEEN ABLE TO HOLD A

6   STEADY -- HARD TIME WITH THIS ECONOMY TO HOLD DOWN A STEADY

7   JOBS WITHOUT GETTING LAID OFF.

8          **THE COURT:**  BUT CURRENTLY YOU ARE WORKING?

9          **PROSPECTIVE JUROR LARKINS:**  CURRENTLY, YES, MA'AM.

10  I HAVE BEEN THERE ABOUT SIX OR SEVEN MONTHS.

11         **THE COURT:**  WHAT HOURS DO YOU WORK?

12         **PROSPECTIVE JUROR LARKINS:**  I WORK ABOUT QUARTER TO

13  EIGHT TO ABOUT QUARTER TO FOUR.

14         **THE COURT:**  AND WHERE DO YOU WORK?

15         **PROSPECTIVE JUROR LARKINS:**  IN SANTA ROSA, MA'AM.

16         **THE COURT:**  MONDAY THROUGH FRIDAY?

17         **PROSPECTIVE JUROR LARKINS:**  NO, MA'AM.

18         **THE COURT:**  WHAT DAYS OF THE WEEK DO YOU WORK?

19         **PROSPECTIVE JUROR LARKINS:**  I WORK -- THEY JUST

20  CHANGED THE DAYS.  I WORK THURSDAY THROUGH MONDAY, I BELIEVE.

21         **THE COURT:**  AND YOU'VE CHECKED ON THE -- ARE YOU AN

22  EMPLOYEE OF KAISER?

23         **PROSPECTIVE JUROR LARKINS:**  NO, MA'AM, CONTRACTOR.

24         **THE COURT:**  WITH THE SECURITY AGENCY?

25         **PROSPECTIVE JUROR LARKINS:**  YES, MA'AM.

1          IF THE DEFENDANT DOES THAT, WILL YOU STILL BE ABLE

2     TO GIVE THE DEFENDANT THE PRESUMPTION OF INNOCENCE?

3          **PROSPECTIVE JUROR LEE-LUM:**  YES.

4          **MS. CHAN:**  WILL YOU BE ABLE TO FOLLOW THE LAW AS THE

5     COURT GIVES IT TO YOU EVEN IF YOU DISAGREE WITH IT OR THINK IT

6     SHOULD BE DIFFERENT?

7          **PROSPECTIVE JUROR LEE-LUM:**  YES.

8          **MS. CHAN:**  AND IS THERE ANYTHING ELSE THAT YOU CAN

9     THINK OF OTHER THAN THE QUESTIONS I HAVE ASKED AND YOU'VE

10    TALKED ABOUT THAT WOULD MAKE IT DIFFICULT FOR YOU TO BE A

11    JUROR?

12         **PROSPECTIVE JUROR LEE-LUM:**  THIS IS ONLY GOING TO

13    LAST ABOUT TWO AND A HALF WEEKS, DO YOU THINK?  I HAVE A NEW

14    JOB.  RIGHT NOW I AM IN THE BACKGROUND CHECK WITH A JOB AND

15    MAYBE GETTING A FINAL OFFER.  THIS WILL ONLY BE ABOUT TWO AND A

16    HALF WEEKS?

17         **THE COURT:**  I GAVE YOU MY BEST GUESS AS TO THE

18    SCHEDULE.

19         **PROSPECTIVE JUROR LEE-LUM:**  THIS WILL BE FINE.

20         **MS. CHAN:**  THANK YOU.

21         MS. SILBERT?

22         **MS. SILBERT:**  THANK YOU.

23         FIRST OF ALL, THE NEW JOB WITH THE BACKGROUND CHECK,

24    IS THAT A GOVERNMENT JOB?

25         **PROSPECTIVE JUROR LEE-LUM:**  NO.  IT'S WITH A

1    CORPORATION.

2         **MS. SILBERT:**  YOU SAID YOU HAD SOME EXPERIENCE WITH

3    TAXES OR TAX ACCOUNTING.  IF YOU WERE CHOSEN TO BE ON THE JURY

4    IN THIS CASE AND DELIBERATING, WOULD YOU BE ABLE TO SET ASIDE

5    YOUR OWN PERSONAL HISTORY AND YOUR OWN BACKGROUND AND DEAL WITH

6    THIS CASE ONLY WITH WHAT YOU HEAR IN THE COURTROOM, OR DO YOU

7    THINK YOUR BACKGROUND WILL INTERFERE WITH YOUR ABILITY TO LOOK

8    AT THE FOUR CORNERS OF THIS CASE?

9         **PROSPECTIVE JUROR LEE-LUM:**  I THINK IT WILL BE OKAY.

10   THERE'S A LITTLE PART WHERE YOU LISTEN TO SOMEONE AND YOU MAY

11   WONDER ARE THEY HIDING SOMETHING OR FEEL BAD FOR THEM BECAUSE

12   THEY DIDN'T GET A FAIR BREAK.

13        **MS. SILBERT:**  YOU SAID YOU HAD DONE TAX AUDITING I

14   THINK FOR 11 YEARS?

15        **PROSPECTIVE JUROR LEE-LUM:**  EIGHT.

16        **MS. SILBERT:**  EIGHT.  I'M SORRY.

17        YOU HAVE SOME DEGREES IN TAX?

18        **PROSPECTIVE JUROR LEE-LUM:**  YES.

19        **MS. SILBERT:**  WOULD YOU BE ABLE TO KEEP YOUR OWN

20   PERSONAL INFORMATION SEPARATE FROM EVERYBODY ELSE ON THE JURY?

21        **PROSPECTIVE JUROR LEE-LUM:**  WHAT DO YOU MEAN, LIKE

22   WHAT IS AUDITED?

23        **THE COURT:**  THE QUESTION IS, THE COURT WILL BE

24   INSTRUCTING THE JURY AS TO THE LAW THAT WILL BE APPLIED.  IT IS

25   IMPORTANT THAT EVERYONE APPLY THE LAW THAT THE COURT GIVES.

1          IF YOU HAD SOME INFORMATION THAT YOU HAD LEARNED

2     THAT YOU THOUGHT PERHAPS THINGS OUGHT TO BE DIFFERENT, OR

3     THOUGHT THE COURT WAS WRONG, OR THOUGHT THE TAX LAWS WERE SOME

4     OTHER WAY, YOU WOULD NEED TO ACCEPT THE INSTRUCTIONS THAT THE

5     COURT GAVE AS TO WHAT THE TAX LAWS ARE AS RELEVANT TO THIS

6     CASE.

7          AND THE QUESTION IS, WOULD YOU BE ABLE TO DO THAT.

8          **PROSPECTIVE JUROR LEE-LUM:**  I WOULD STILL HAVE AN

9     OPINION ABOUT WHAT I THINK IS THE LAW.

10         **THE COURT:**  YOU ARE CERTAINLY WELCOME TO YOUR

11    OPINION AND EVERYONE HAS ONE, BUT WOULD YOU BE ABLE TO ACCEPT

12    THE COURT'S INSTRUCTIONS AND FOLLOW THE LAW AS THE COURT GIVES

13    IT TO YOU IN DECIDING THIS PARTICULAR CASE?

14         **PROSPECTIVE JUROR LEE-LUM:**  YES.

15         **MS. SILBERT:**  WOULD YOU BE ABLE TO KEEP WHAT YOU

16    KNOW TO YOURSELF?  IN OTHER WORDS, EVEN IF ANOTHER JUROR ASKED

17    YOU, TELL US ABOUT TAXES, YOU UNDERSTAND THAT WOULD BE

18    INFORMATION NOT RELEVANT TO THE DELIBERATION PROCESS?

19         **PROSPECTIVE JUROR LEE-LUM:**  SURE.  YES.

20         **MS. SILBERT:**  THANK YOU.

21         **MS. CHAN:**  GOOD MORNING, MR. HOLLS.

22         **PROSPECTIVE JUROR HOLLS:**  GOOD MORNING.

23         **MS. CHAN:**  DO YOU OR ANYBODY CLOSE TO YOU KNOW OF

24    OFFICERS, SPECIAL AGENTS OR EMPLOYEES OF THE FBI OR INTERNAL

25    REVENUE SERVICE?

1    SHOULD BE DIFFERENT?

2              **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  YES.

3              **MS. CHAN:**  HAVING HEARD THESE QUESTIONS AND THE

4    RESPONSES YOU HAVE GIVEN, CAN YOU THINK OF ANYTHING ELSE THAT

5    WOULD -- ABOUT THE NATURE OF THIS CASE OR ANYTHING ELSE THAT

6    WOULD MAKE IT DIFFICULT FOR YOU TO BE A JUROR?

7              **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  NO.

8              **MS. CHAN:**  MS. SILBERT?

9              **MS. SILBERT:**  THANK YOU, MS. CHAN.

10             YOU SAID THAT YOU WORK WITH LAW ENFORCEMENT

11   OFFICERS?

12             **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  CORRECT.

13             **MS. SILBERT:**  I ASSUME YOU ARE FRIENDLY WITH SOME OF

14   THEM.

15             **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  UH-HUH.

16             **MS. SILBERT:**  AM I CORRECT THAT YOU BELIEVE THAT

17   THAT WOULD MAKE YOU -- GO BACK.  YOU SAID THAT THAT -- YOU

18   THINK IT IS MORE LIKELY THEN THAT THOSE LAW ENFORCEMENT

19   OFFICERS, IF YOU HEAR FROM LAW ENFORCEMENT OFFICERS HERE, IT'

20   MORE LIKELY THEY WOULD BE TELLING THE TRUTH THAN A CITIZEN?

21             **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  YES.  I MEAN, I

22   GUESS IT JUST DEPENDS ON THE CASE OR WHATNOT.  I AM NOT SURE I

23   CAN PUT MY, YOU KNOW, FEELINGS -- I WOULD HAVE TO LOOK AT THE

24   CASE.

25             **MS. SILBERT:**  SO IF YOU LISTEN TO ALL THE CASE AND

1   THERE WAS A CONFLICT BETWEEN A LAW ENFORCEMENT OFFICER AND

2   ANOTHER PERSON, WOULD YOU BE ABLE TO TREAT THEM ALL EQUALLY AS

3   IF THE LAW ENFORCEMENT OFFICER WASN'T EVEN A LAW ENFORCEMENT

4   OFFICER?

5           PROSPECTIVE JUROR GARGAIKIS-PRATER:   IF HE WASN'T A

6   LAW ENFORCEMENT?

7           MS. SILBERT:   WOULD YOU BE ABLE TO TREAT BOTH PEOPLE

8   GIVING YOU DIFFERENT STORIES AS EQUALS?

9           PROSPECTIVE JUROR GARGAIKIS-PRATER:   YES.

10          MS. SILBERT:   DESPITE THE FACT THAT ONE OF THEM WAS

11  A LAW ENFORCEMENT OFFICER?

12          PROSPECTIVE JUROR GARGAIKIS-PRATER:   YES.

13          MS. SILBERT:   AND ON THE ISSUE OF REASONABLE DOUBT,

14  DO YOU UNDERSTAND IT IS A CRIMINAL CASE AND THE DEFENDANT IS

15  PRESUMED INNOCENT, THAT THE DEFENSE COULD NOT QUESTION A SINGLE

16  WITNESS, COULD NOT PUT ON A SINGLE PIECE OF EVIDENCE, AND IF

17  YOU, AS A JUROR, WERE -- DIDN'T BELIEVE THAT THE GOVERNMENT HAD

18  PROVEN ITS CASE TO YOU, YOU WOULD BE OBLIGATED TO COME BACK

19  WITH A NOT GUILTY VERDICT, EVEN IF THE DEFENSE DID NOTHING.

20          DO YOU UNDERSTAND THAT?

21          PROSPECTIVE JUROR GARGAIKIS-PRATER:   NO.

22          MS. SILBERT:   IT IS SOLELY THE GOVERNMENT'S BURDEN

23  TO PROVE ITS CASE TO YOU BEYOND A REASONABLE DOUBT.

24          DO YOU UNDERSTAND THAT?

25          PROSPECTIVE JUROR GARGAIKIS-PRATER:   I DO, YES.

1          **MS. SILBERT:**  SO THAT EVEN IF THE DEFENSE DID

2    NOTHING, DIDN'T QUESTION A SINGLE WITNESS, DIDN'T PUT ON A

3    SINGLE PIECE OF EVIDENCE, IF YOU BELIEVE THAT THE GOVERNMENT

4    HAD NOT PROVED ITS CASE TO YOU, YOU WOULD STILL BE OBLIGATED TO

5    RETURN A NOT GUILTY VERDICT.

6          DO YOU AGREE WITH THAT?

7          **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  I DON'T KNOW.

8    THAT ONE IS TOUGH.

9          **MS. SILBERT:**  TOUGH BECAUSE IT WOULD BE HARD FOR YOU

10   TO RETURN A NOT GUILTY VERDICT --

11         **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  CORRECT.

12         **MS. SILBERT:**  -- IF THE DEFENSE DIDN'T DO ANYTHING?

13         **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  YES.

14         **MS. SILBERT:**  DO YOU BELIEVE THAT THAT WOULD BE A

15   BIAS THAT YOU WOULD HAVE WHEN YOU'RE DELIBERATING?

16         **PROSPECTIVE JUROR GARGAIKIS-PRATER:**  POSSIBLY YES.

17         **MS. CHAN:**  GOOD MORNING, MR. TONG.

18         **PROSPECTIVE JUROR TONG:**  GOOD MORNING.

19         **MS. CHAN:**  DO YOU OR ANYBODY CLOSE --

20         **THE COURT:**  I'M SORRY.

21         MS. PRATER, I'M NOT SURE YOU UNDERSTOOD THE

22   QUESTION.

23         THE DEFENSE ATTORNEY POSED A HYPOTHETICAL THAT THE

24   GOVERNMENT HAD NOT PROVED ITS CASE.  IF THE GOVERNMENT DIDN'T

25   PROVE ITS CASE, YOU WOULD STILL VOTE TO CONVICT?

1    TO FOLLOW THE LAW AS THE COURT GAVE IT TO YOU?

2              **PROSPECTIVE JUROR MURPHY:**  YES.

3          **MS. CHAN:**  IS THERE ANYTHING ELSE BESIDES WHAT WE

4    TALKED ABOUT IN THE QUESTION AND YOUR RESPONSES JUST NOW THAT

5    YOU CAN THINK OF ABOUT THE NATURE OF THIS CASE THAT WOULD MAKE

6    IT DIFFICULT FOR TO YOU BE A JUROR?

7              **PROSPECTIVE JUROR MURPHY:**  NOPE.

8          **MS. CHAN:**  OKAY.  MS. SILBERT?

9          **MS. SILBERT:**  THANK YOU.

10         MR. MURPHY, YOU SAID SOMETHING ABOUT NOT WANTING TO

11   BE RESPONSIBLE.  I UNDERSTAND THAT FEELING.  IF YOU WERE ON

12   THIS JURY, AND THE JUDGE INSTRUCTED YOU IT WAS YOUR JOB TO

13   DELIBERATE AND TO REACH A RESOLUTION WITH YOUR FELLOW JURORS,

14   WOULD YOU BE ABLE TO DO THAT?

15             **PROSPECTIVE JUROR MURPHY:**  I HAVE NO CHOICE.

16         **MS. SILBERT:**  YOU COULD DO WHAT THE JUDGE INSTRUCTED

17   YOU TO DO?

18             **PROSPECTIVE JUROR MURPHY:**  I RATHER NOT, BUT I HAVE

19   NO CHOICE.  IF I AM PUT ON, I'M PUT ON.  WHAT CAN I DO ABOUT

20   IT?

21         **THE COURT:**  WHY DON'T WE TAKE A BREAK, LADIES AND

22   GENTLEMEN, IN JUST A MOMENT.

23         LET ME ASK YOU, THOUGH, DURING THE BREAK, NOT TO

24   DISCUSS THE CASE AMONGST YOURSELVES OR WITH ANYONE ELSE, NOT TO

25   HAVE ANY CONTACT OR DISCUSSIONS WITH ANY OF THE PEOPLE WHO ARE

1    INVOLVED IN THE CASE.

2              WHEN YOU RETURN FROM THE BREAK, COME BACK AND SIT IN

3    THE SAME SPOT.  IF YOU LIKE, YOU CAN LEAVE YOUR COATS THERE.

4    IT'S ABOUT QUARTER TO 11.  WE WILL RESUME AT 11:00 O'CLOCK.

5              IF YOU NEED TO HAVE SOMETHING VERIFIED WITH YOUR

6    OFFICE, OR GET DOCUMENTATION OF THINGS, OR CALL YOUR OFFICE TO

7    FIND SOMETHING OUT DURING THE BREAK, YOU MIGHT NEED WHEN YOU

8    ARE QUESTIONED, GO AHEAD AND DO THAT DURING THE BREAK, AND WE

9    WILL SEE YOU BACK AT 11:00.

10             I WILL NEED EVERYONE TO LEAVE, EVEN IF YOU DON'T

11   WANT TO TAKE A BREAK, BECAUSE WE DO NEED TO TALK ABOUT SOME

12   THINGS OUTSIDE YOUR PRESENCE.

13             I NEED TO SPEAK TO THE ATTORNEYS.

14             (PROCEEDINGS HELD OUTSIDE THE PRESENCE OF THE JURY.)

15        **THE COURT:**  DOES ANYONE HAVE ANY FOLLOW-UP QUESTIONS

16   THAT YOU WERE UNABLE TO ASK OR CAUSE CHALLENGES?

17        **MR. BLANK:**  YOUR HONOR, ON BEHALF OF MS. CAULDER, WE

18   HAVE TWO FOR CAUSE CHALLENGES THUS FAR.  JUROR NUMBER ONE,

19   MR. WONG.

20        **THE COURT:**  AND WHO ELSE?

21        **MR. BLANK:**  JUROR NUMBER TWO, MR. LE.  THE ISSUE

22   WITH MR. LE IS DUE TO HIS ABILITY TO UNDERSTAND FULLY THE

23   ENGLISH LANGUAGE.  AND ALSO HE SAID THAT BECAUSE OF, I THINK,

24   AN INJURY AND PERHAPS MEDICATION, HE'S LIKELY TO FALL ASLEEP.

25        **THE COURT:**  HE SAID HE HAS SLEEP APNEA AND IF HE SAT

1      **MS. CHAN:**  AND THE GOVERNMENT BEARS THAT BURDEN?

2      **PROSPECTIVE JUROR OMALLEY:**  YES, I DO.

3      **MS. CHAN:**  DO YOU AGREE WITH THAT PRINCIPLE?

4      **PROSPECTIVE JUROR OMALLEY:**  YES, I DO.

5      **MS. CHAN:**  IF THE DEFENDANT WOULD ELECT NOT TO

6  PRESENT ANY TESTIMONY WHICH IS HER CONSTITUTIONAL RIGHT, WOULD

7  YOU STILL BE ABLE TO GIVE HER THE BENEFIT OF THE PRESUMPTION OF

8  INNOCENCE?

9      **PROSPECTIVE JUROR OMALLEY:**  YES, I WOULD.

10      **MS. CHAN:**  WILL YOU BE ABLE TO FOLLOW THE LAW AS THE

11  COURT GIVES IT TO YOU EVEN IF YOU DISAGREE WITH IT OR THINKS

12  THAT IT SHOULD BE DIFFERENT?

13      **PROSPECTIVE JUROR OMALLEY:**  YES, I WOULD.

14      **MS. CHAN:**  AND CAN YOU THINK OF ANYTHING ABOUT THE

15  NATURE OF THIS CASE THAT WOULD MAKE IT DIFFICULT FOR YOU TO BE

16  A JUROR?

17      **PROSPECTIVE JUROR OMALLEY:**  NO, ASSUMING THAT THE

18  TIME PERIOD IS AS THE COURT HAS STATED.  I HAVE PLANE TICKETS

19  ON DECEMBER 21ST.

20      **MS. CHAN:**  AND ANYTHING ELSE OTHER THAN THAT?

21      **PROSPECTIVE JUROR OMALLEY:**  NO.

22      **MS. CHAN:**  MS. SILBERT?

23      **MS. SILBERT:**  THANK YOU, MS. CHAN.

24      YOU MENTIONED THAT YOU KNOW MR. RYAN?

25      **PROSPECTIVE JUROR OMALLEY:**  YES.

1      **MS. SILBERT:**  WOULD YOU HAVE ANY BIAS TOWARDS THE

2   PEOPLE IN HIS OFFICE IF YOU WERE DELIBERATING ON THIS CASE OR

3   HEARD THE EVIDENCE, WOULD YOU HAVE ANY BIAS TOWARDS OR AGAINST

4   THE PEOPLE IN HIS OFFICE BECAUSE OF THE RELATIONSHIP?

5      **PROSPECTIVE JUROR OMALLEY:**  NO.

6      **MS. SILBERT:**  THANK YOU.

7      DO YOU PRACTICE CIVIL OR CRIMINAL LAW?

8      **PROSPECTIVE JUROR OMALLEY:**  CIVIL.

9      **MS. SILBERT:**  HAVE YOU HAD ANY EXPERIENCE WITH

10   CRIMINAL LAW OTHER THAN LAW SCHOOL?

11      **PROSPECTIVE JUROR OMALLEY:**  I SERVED ON A CRIMINAL

12   CASE ABOUT THREE YEARS AGO IN SAN FRANCISCO.

13      **MS. SILBERT:**  OTHER THAN THAT?

14      **PROSPECTIVE JUROR OMALLEY:**  NO.

15      **MS. SILBERT:**  THANK YOU.

16      **MS. CHAN:**  GOOD MORNING, MS. MANEJA.

17      **PROSPECTIVE JUROR MANEJA:**  GOOD MORNING.

18      **MS. CHAN:**  DO YOU OR ANYBODY CLOSE TO YOU KNOW ANY

19   OFFICERS, SPECIAL AGENTS OR EMPLOYEES OF THE FEDERAL BUREAU OF

20   INVESTIGATION OR INTERNAL REVENUE SERVICE?

21      **PROSPECTIVE JUROR MANEJA:**  NO.

22      **MS. CHAN:**  HAVE YOU WORKED AS A LAW ENFORCEMENT

23   OFFICER OR HAD CLOSE FRIENDS OR RELATIVES WHO HAVE?

24      **PROSPECTIVE JUROR MANEJA:**  NO.

25      **MS. CHAN:**  DO YOU THINK THAT A LAW ENFORCEMENT

1    DIFFICULT FOR YOU TO BE A JUROR?

2          **PROSPECTIVE JUROR SCHNEIDER:**  NO.

3          **MS. CHAN:**  THANK YOU VERY MUCH.

4          MS. SILBERT?

5          **MS. SILBERT:**  THANK YOU, MS. CHAN.

6          MS. SCHNEIDER, JUST QUICKLY.  YOU MENTIONED YOU HAD

7    SOME PAST EXPERIENCES WITH CRIMES.  DO THOSE EXPERIENCES HAVE

8    ANY EFFECT ON YOUR, ON YOUR FEELINGS ABOUT SERVING ON A JURY IN

9    A CRIMINAL CASE?

10         **PROSPECTIVE JUROR SCHNEIDER:**  NO, MA'AM.

11         **MS. SILBERT:**  WOULD YOU BE ABLE TO DELIBERATE FAIRLY

12   GIVING THE DEFENDANT THE PRESUMPTION OF INNOCENCE DESPITE YOUR

13   PAST EXPERIENCES IN THE CRIMINAL CASE?

14         **PROSPECTIVE JUROR SCHNEIDER:**  YES.

15         THANK YOU.

16         **MS. CHAN:**  MR. SPEED?

17         **PROSPECTIVE JUROR SPEED:**  GOOD MORNING.

18         **MS. CHAN:**  DO YOU OR DOES ANYBODY CLOSE TO YOU KNOW

19   OF ANY OFFICERS, SPECIAL AGENTS, OR EMPLOYEES OF THE FBI OR

20   IRS?

21         **PROSPECTIVE JUROR SPEED:**  NO.

22         **MS. CHAN:**  HAVE YOU WORKED AS A LAW ENFORCEMENT

23   OFFICER OR HAVE CLOSE FRIENDS OR RELATIVES WHO HAVE?

24         **PROSPECTIVE JUROR SPEED:**  NO.

25         **MS. CHAN:**  DO YOU THINK A LAW ENFORCEMENT OFFICER IS

1          **MS. SILBERT:**  MR. TOLOSA, YOU SAID, I BELIEVE, THAT

2    BECAUSE OF YOUR DAD YOU DIDN'T THINK YOU COULD BE FAIR?

3          **PROSPECTIVE JUROR TOLOSA:**  YEAH.

4          **MS. SILBERT:**  CAN YOU EXPLAIN THAT?

5          **PROSPECTIVE JUROR TOLOSA:**  BECAUSE I FAVOR,

6    OBVIOUSLY, I RESPECT THE BADGE.  AND, YOU KNOW, HE WOULDN'T

7    JUST -- HE JUST WOULDN'T GIVE THEM A TICKET OR SOMETHING

8    BECAUSE HE FELT LIKE THAT'S MORE WORK FOR HIM TO DO THAN TO

9    WRITE TICKETS.

10          **MS. SILBERT:**  I BELIEVE YOU ALSO SAID SOMETHING

11    ABOUT BEING HERE FOR A REASON.

12          DO YOU UNDERSTAND THAT IF SOMEONE IS HERE, THEY ARE

13    STILL PRESUMED TO BE INNOCENT?

14          **PROSPECTIVE JUROR TOLOSA:**  YEAH, I BELIEVE SO.

15          **MS. SILBERT:**  COULD BE, BUT ARE PRESUMED TO BE

16    INNOCENT.

17          **PROSPECTIVE JUROR TOLOSA:**  YEAH, YEAH, YEAH.

18          **MS. SILBERT:**  I BELIEVE YOU SAID IF THE JUDGE

19    INSTRUCTED YOU TO CONSIDER ALL THE TESTIMONY OF THE WITNESSES

20    INDIVIDUALLY, DO YOU STILL THINK IT IS MORE LIKELY THAT A LAW

21    ENFORCEMENT WOULD TELL THE TRUTH?

22          **PROSPECTIVE JUROR TOLOSA:**  I WOULD LEAN TOWARDS

23    THAT, YEAH.

24          **MS. SILBERT:**  THANK YOU.

25          **MS. CHAN:**  GOOD MORNING, MS. CHENG.  HOW ARE YOU?

1    PROVES THAT SHE IS?

2            **PROSPECTIVE JUROR CHENG:**  YES.

3        **MS. CHAN:**  DO YOU UNDERSTAND THAT THAT HAS TO BE

4    PROVEN BEYOND A REASONABLE DOUBT?

5            **PROSPECTIVE JUROR CHENG:**  I DON'T UNDERSTAND THIS

6    QUESTION.

7        **MS. CHAN:**  OKAY.  WILL YOU BE ABLE TO FOLLOW THE LAW

8    AS THE COURT GIVES IT TO YOU?

9            **PROSPECTIVE JUROR CHENG:**  YES.

10        **MS. CHAN:**  AND IF THE COURT EXPLAINS TO YOU THAT YOU

11    CANNOT CONVICT THE DEFENDANT UNLESS THE GOVERNMENT PROVES, SO

12    THAT YOU HAVE NO DOUBT, OR YOU ONLY HAVE A REASONABLE DOUBT --

13    OR BEYOND A REASONABLE DOUBT -- EXCUSE ME, THAT SHE IS GUILTY,

14    THAT YOU WOULD FIND HER INNOCENT?

15            **PROSPECTIVE JUROR CHENG:**  I DON'T KNOW.

16        **MS. CHAN:**  OKAY.  I HAVE NO MORE QUESTIONS.

17        MS. SILBERT?

18        **MS. SILBERT:**  GOOD MORNING, MS. CHENG.  THANK YOU

19    FOR COMING.

20            IN YOUR JOB, DO YOU WORK IN ENGLISH OR CHINESE?

21            **PROSPECTIVE JUROR CHENG:**  MOSTLY, BECAUSE MY BOSS IS

22    CHINESE, AND I HAVE A COLLEAGUE ALL IN CHINESE, SO WE SPEAK

23    CHINESE IN THE OFFICE.

24        **MS. SILBERT:**  IN YOUR HOME AND YOUR COMMUNITY, ARE

25    YOU SPEAKING IN ENGLISH OR CHINESE?

1    **PROSPECTIVE JUROR CHENG:**  CHINESE, TOO.

2    **MS. SILBERT:**  IS IT RARE YOU SPEAK ENGLISH?

3    **PROSPECTIVE JUROR CHENG:**  I SPEAK ENGLISH, YOU KNOW,

4    RARELY.

5    **MS. SILBERT:**  OKAY.  THANK YOU VERY MUCH.  THANK YOU

6    FOR COMING.

7    **MS. CHAN:**  GOOD MORNING, MS. COX.

8    **PROSPECTIVE JUROR COX:**  GOOD MORNING.

9    **MS. CHAN:**  DO YOU OR DOES ANYONE CLOSE TO YOU KNOW

10   OF ANY OFFICERS, SPECIAL AGENTS, OR EMPLOYEES OF THE FBI OR THE

11   IRS?

12   **PROSPECTIVE JUROR COX:**  I KNOW A COUPLE OF EMPLOYEES

13   AT THE IRS CASUALLY.  I SEE THEM IN LINE FOR THE BUS.

14   **MS. CHAN:**  DO YOU EVER TALK TO THEM ABOUT THEIR JOBS

15   OR WORK?

16   **PROSPECTIVE JUROR COX:**  NOT AT ALL.

17   **MS. CHAN:**  DOES YOUR KNOWLEDGE OF THEM IMPACT YOUR

18   ABILITY TO BE FAIR IN THIS CASE?

19   **PROSPECTIVE JUROR COX:**  NO.

20   **MS. CHAN:**  DO YOU THINK THAT A LAW ENFORCEMENT IS

21   EITHER MORE LIKELY OR LESS LIKELY TO BE TRUTHFUL?

22   **PROSPECTIVE JUROR COX:**  NO.  I DON'T THINK THAT.

23   **MS. CHAN:**  HAVE YOU EVER SERVED IN THE MILITARY?

24   **PROSPECTIVE JUROR COX:**  NO.

25   **MS. CHAN:**  HAVE YOU OR A CLOSE FRIEND OR RELATIVE

1          MS. COX, I SEE YOU ARE AN ATTORNEY.

2          **PROSPECTIVE JUROR COX:**  YES.

3          **MS. SILBERT:**  IN THE COURSE OF YOUR JOB, DO YOU HAVE

4     A NEED TO DO RESEARCH ON BANKRUPTCY LAW AND BANKRUPTCY

5     REQUIREMENTS?

6          **PROSPECTIVE JUROR COX:**  I DON'T BELIEVE SO.  I

7     CURRENTLY, MY POSITION IS ATTORNEY, BUT THE JOB IS MORE OF AN

8     EDITORIAL NATURE.  AND WHEN I WAS WORKING ON DRAFT OPINIONS, IT

9     WAS 17 YEARS AGO PLUS AND IT WAS STATE COURT.  I DON'T BELIEVE

10    BANKRUPTCY WOULD HAVE COME UP AT ALL.  I DON'T RECALL ANY.

11         **MS. SILBERT:**  AND I HAVE THE SAME QUESTIONS FOR TAX

12    LAW OR CRIMINAL LAW, OUTSIDE EXPERIENCE IN TAX LAW OR CRIMINAL

13    LAW?

14         **PROSPECTIVE JUROR COX:**  WELL, I TOOK COURSES, OF

15    COURSE, AND IN MY FORMER JOB 17 YEARS AGO, I WOULD HAVE WORKED

16    ON CRIMINAL MATTERS.  I DON'T THINK WE WOULD HAVE HAD TAX LAW.

17         **MS. SILBERT:**  WOULD YOU BE ABLE TO ACCEPT THE LEGAL

18    INSTRUCTIONS THAT THE JUDGE GIVES YOU IN THIS CASE AND TAKE

19    YOUR -- LEAVE YOUR OWN EXPERIENCE OUTSIDE OF THE JURY ROOM?

20         **PROSPECTIVE JUROR COX:**  YES.

21         **MS. SILBERT:**  THANK YOU VERY MUCH.

22         **MS. CHAN:**  HI, MS. ACOSTA.

23         **PROSPECTIVE JUROR ACOSTA:**  HI.

24         **MS. CHAN:**  DO YOU OR ANYBODY CLOSE TO YOU KNOW OF

25    ANY OFFICERS, SPECIAL AGENTS OR EMPLOYEES OF THE FBI OR IRS?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1    **PROSPECTIVE JUROR ACOSTA:**  YES.

2    **MS. CHAN:**  CAN YOU THINK OF ANYTHING THAT WOULD MAKE

3    IT DIFFICULT FOR YOU TO BE A JUROR IN THIS CASE.

4    **PROSPECTIVE JUROR ACOSTA:**  NO.

5    **MS. CHAN:**  THANK YOU.

6    MS. SILBERT?

7    **MS. SILBERT:**  THANK YOU.

8    MS. ACOSTA, DO YOU -- YOU KNOW THERE ARE TWO

9    DIFFERENT TYPES OF CASES, CIVIL AND CRIMINAL CASES?

10    **PROSPECTIVE JUROR ACOSTA:**  YES.

11    **MS. SILBERT:**  DO YOU KNOW THAT THERE ARE DIFFERENT

12    THINGS THAT HAVE TO BE PROVED IN CIVIL CASES AND CRIMINAL

13    CASES.  DO YOU UNDERSTAND WHAT THAT DIFFERENCE IS?

14    **PROSPECTIVE JUROR ACOSTA:**  NOT REALLY.

15    **MS. SILBERT:**  DO YOU UNDERSTAND THAT IN A CIVIL CASE

16    ONE SIDE JUST HAS TO PROVE ITS CASE BY A PREPONDERANCE, JUST A

17    LITTLE MORE LIKELY THAN NOT.

18    THIS IS A CRIMINAL CASE, WHICH IS A DIFFERENT,

19    HIGHER STANDARD?

20    **PROSPECTIVE JUROR ACOSTA:**  UH-HUH.

21    **MS. SILBERT:**  DO YOU KNOW WHAT THE STANDARD IS HERE?

22    **PROSPECTIVE JUROR ACOSTA:**  THIS IS MY FIRST TIME, SO

23    I DON'T REALLY KNOW.  YOU CAN EXPLAIN TO ME.

24    **MS. SILBERT:**  OF COURSE.  OF COURSE.

25    DO YOU UNDERSTAND THAT IN A CRIMINAL CASE THE

1    STANDARD IS DIFFERENT, IT'S HIGHER, IT IS BEYOND A REASONABLE

2    DOUBT?

3              **PROSPECTIVE JUROR ACOSTA:**  YES.

4              **MS. SILBERT:**  DO YOU UNDERSTAND WHAT BEYOND A

5    REASONABLE DOUBT IS?

6              **PROSPECTIVE JUROR ACOSTA:**  YEAH.

7              **MS. SILBERT:**  DO YOU UNDERSTAND IT IS HIGHER THAN

8    PREPONDERANCE?

9              **PROSPECTIVE JUROR ACOSTA:**  UH-HUH.

10             **MS. SILBERT:**  DO YOU AGREE THAT THE GOVERNMENT HAS

11   100 PERCENT OF THE BURDEN OF PROVING TO THE JURY BEYOND A

12   REASONABLE DOUBT THEIR CASE?

13             **PROSPECTIVE JUROR ACOSTA:**  YEAH.  YES, I UNDERSTAND.

14             **MS. SILBERT:**  IF THEY DO NOT PROVE TO YOU BEYOND A

15   REASONABLE DOUBT THAT THEY ARE RIGHT, THAT YOU WOULD BE

16   REQUIRED TO RETURN A NOT GUILTY VERDICT?

17             **PROSPECTIVE JUROR ACOSTA:**  IT'S A VERY CONFUSING

18   QUESTION.

19             **MS. SILBERT:**  I AM ASKING ABOUT THE BURDEN IN A

20   CRIMINAL CASE, WHICH IS BEYOND A REASONABLE DOUBT.  AND I HAVE

21   MENTIONED THAT IT IS THE GOVERNMENT'S SOLE BURDEN, 100 PERCENT

22   THEIR BURDEN TO PROVE TO THE JURY THEIR CASE BEYOND A

23   REASONABLE DOUBT.  DO YOU AGREE WITH THAT?

24             **PROSPECTIVE JUROR ACOSTA:**  YES, I AGREE.

25             **MS. SILBERT:**  DO YOU AGREE THAT IF THE GOVERNMENT IS

1   NOT ABLE TO PROVE THEIR CASE BEYOND A REASONABLE DOUBT, YOU

2   MUST RETURN A VERDICT OF NOT GUILTY?

3            **PROSPECTIVE JUROR ACOSTA:**  YEAH.

4            **MS. SILBERT:**  THANK YOU.

5            **THE COURT:**  WOULD YOU PASS THE MICROPHONE BEHIND YOU

6   AND THEN, IF YOU WOULD PASS IT ALL THE WAY DOWN TO THE OTHER

7   END OF THAT ROW, PLEASE, WHICH WE HOPE WILL BE MS. LUI.

8            IF YOU WOULDN'T MIND, COULD YOU STAND UP?  COULD YOU

9   STAND UP, MS. LUI?  IT IS HARD TO SEE YOU BACK THERE.

10           THANK YOU.

11           **MS. CHAN:**  HI, MS. LIU.  CAN YOU HEAR ME?

12           **PROSPECTIVE JUROR LIU:**  YEAH.

13           **MS. CHAN:**  OKAY, GREAT.  DO YOU OR DOES ANYBODY

14  CLOSE TO YOU KNOW OF ANY OFFICERS, SPECIAL AGENTS, OR EMPLOYEES

15  WITH THE FBI OR IRS?

16           **PROSPECTIVE JUROR LIU:**  NO.

17           **MS. CHAN:**  COULD YOU HOLD THE MICROPHONE CLOSER?

18           **PROSPECTIVE JUROR LIU:**  NO.

19           **MS. CHAN:**  HAVE YOU WORKED AS A LAW ENFORCEMENT

20  OFFICER OR HAD CLOSE FRIENDS OR RELATIVES WHO HAVE?

21           **PROSPECTIVE JUROR LIU:**  NO.

22           **MS. CHAN:**  DO YOU THINK THAT THE FACT THAT SOMEBODY

23  IS A LAW ENFORCEMENT OFFICER WOULD MAKE IT MORE LIKELY OR LESS

24  LIKELY THAT THEY ARE TELLING THE TRUTH?

25           **PROSPECTIVE JUROR LIU:**  NO.  MORE LIKELY.

1   TESTIMONY OR EVIDENCE, WILL YOU STILL GIVE HER THE BENEFIT OF

2   THE PRESUMPTION OF INNOCENCE?

3           **PROSPECTIVE JUROR LIU:**  YES.

4           **MS. CHAN:**  WILL YOU FOLLOW THE LAW THE COURT GIVES

5   TO YOU EVEN IF YOU DISAGREE WITH IT OR THINKS IT SHOULD BE

6   DIFFERENT?

7           **PROSPECTIVE JUROR LIU:**  YES.

8           **MS. CHAN:**  CAN YOU THINK OF ANYTHING ABOUT THE

9   NATURE OF THIS CASE THAT WOULD MAKE IT DIFFICULT FOR YOU TO BE

10  A JUROR?

11          **PROSPECTIVE JUROR LIU:**  NO.

12          **MS. CHAN:**  THANK YOU.

13          MS. SILBERT?

14          **MS. SILBERT:**  MS. LUI, I AM SORRY, WHAT SUBJECT DO

15  YOU TEACH?

16          **PROSPECTIVE JUROR LIU:**  CANTONESE.

17          **MS. SILBERT:**  YOU TEACH --

18          **PROSPECTIVE JUROR LIU:**  CANTONESE.

19          **MS. SILBERT:**  TO ENGLISH SPEAKERS TO LEARN CANTONESE

20  OR CHINESE STUDENTS WHO ARE --

21          **PROSPECTIVE JUROR LIU:**  I HAVE A FEW ENGLISH

22  SPEAKERS, BUT MOSTLY AMERICAN CHINESE.

23          **MS. SILBERT:**  IT SOUNDS LIKE YOU ARE FLUENT.  ARE

24  YOU FLUENT IN BOTH ENGLISH AND CHINESE?

25          **PROSPECTIVE JUROR LIU:**  YEAH.  MY ENGLISH IS OKAY.

1          THANK YOU VERY MUCH.

2          **MS. SILBERT:**  THANK YOU.

3          YOU SAID, I BELIEVE, THAT YOU THINK LAW ENFORCEMENT

4    OFFICERS ARE MORE LIKELY TO TELL THE TRUTH.  CAN YOU STOP

5    THINKING THAT?

6          **THE COURT:**  I DON'T THINK THAT'S THE RELEVANT

7    QUESTION.

8          **PROSPECTIVE JUROR CHAN:**  THAT IS A TOUGH QUESTION.

9          **THE COURT:**  WHY DON'T YOU REPHRASE YOUR QUESTION,

10   MS. SILBERT, OR I CAN ASK IT.

11         **MS. SILBERT:**  IF THE JUDGE TELLS YOU TO STOP

12   THINKING THIS WAY --

13         **THE COURT:**  NO.  IF THE JUDGE INSTRUCTS YOU THAT IN

14   CONSIDERING THE EVIDENCE IN THIS CASE, YOU SHOULD CONSIDER THE

15   TESTIMONY OF EACH WITNESS AS AN INDIVIDUAL AND APPLY THE SAME

16   STANDARDS TO EACH WITNESS' TESTIMONY AND DECIDE INDIVIDUALLY AS

17   TO EACH, WHETHER EACH IS TELLING THE TRUTH OR NOT TELLING THE

18   TRUTH BASED ON THAT INDIVIDUAL AND NOT BASED ON A PRECONCEIVED

19   IDEA OF THEIR OCCUPATION, DO YOU THINK YOU CAN DO THAT?

20         **PROSPECTIVE JUROR CHAN:**  I CAN DO THAT, YES.

21         **MS. SILBERT:**  DO YOU UNDERSTAND THAT WHAT THE

22   JUDGE -- DID YOU UNDERSTAND WHAT THE JUDGE IS TELLING YOU?

23         **PROSPECTIVE JUROR CHAN:**  I THINK IT IS NOT BASED ON

24   WHAT THE PERSON DOING, IT IS JUST BASED LIKE EVERYBODY ON THE

25   STREET, THEN I MAKE MY JUDGMENT.

1          **MS. SILBERT:**  THANK YOU.

2          AND THE ISSUE AS TO LANGUAGE, I APOLOGIZE, YOU SAID

3    SLANG WAS A PROBLEM.  WHAT ABOUT LEGAL TERMS OR TECHNICAL

4    TERMS?

5          **PROSPECTIVE JUROR CHAN:**  IT IS A PROBLEM FOR ME,

6    TOO.

7          **MS. SILBERT:**  LEGAL TERMS TEND TO BE A PROBLEM?

8          **PROSPECTIVE JUROR CHAN:**  I AM NOT A LEGAL SECRETARY,

9    SO IT MIGHT BE A PROBLEM.

10          **MS. SILBERT:**  THE JUDGE WILL GIVE YOU EXPLANATIONS

11    ABOUT WHAT THE LAW IS.

12          **PROSPECTIVE JUROR CHAN:**  THAT WOULD BE LIKE AFTER

13    THE JUDGE WANT TO SAY THEN IT'S MUCH BETTER FOR ME.

14          **MS. SILBERT:**  DO YOU BELIEVE THAT YOUR LANGUAGE

15    ISSUES WILL BE ANY PROBLEM WITH YOU HEARING THE WITNESSES, WHEN

16    THE WITNESSES ARE TALKING, IF YOU HEAR THE EVIDENCE, DO YOU

17    BELIEVE YOUR LANGUAGE ISSUES WILL CAUSE ANY PROBLEM FOR YOU?

18          **PROSPECTIVE JUROR CHAN:**  I DON'T HAVE CONFIDENCE.

19    IT MIGHT BE.

20          **MS. SILBERT:**  YOU DON'T HAVE CONFIDENCE IN YOUR

21    ABILITY --

22          **PROSPECTIVE JUROR CHAN:**  I DON'T HAVE CONFIDENCE,

23    REALLY.

24          **THE COURT:**  DO YOU RENT OR OWN YOUR HOME?

25          **PROSPECTIVE JUROR CHAN:**  UH?

1        **PROSPECTIVE JUROR IN:**  I WAS SOMEWHAT -- SOMETIMES

2   THIS YEAR TO BE IN COURT.  SO IF POSSIBLE, TO POSTPONE IT, MY

3   DUTIES.

4        **MS. CHAN:**  DID YOU SERVE ON A JURY?

5        **PROSPECTIVE JUROR IN:**  NO, I DIDN'T SERVE.  I JUST

6   GOT -- NEED TO CALL IN AND I WAS NOT SELECTED.

7        **MS. CHAN:**  OKAY.  YOU WERE NOT SELECTED.  ALL RIGHT.

8   THANK YOU.

9        **MS. SILBERT:**  MR. IN, ARE YOU CONFIDENT IN YOUR

10   ABILITY TO -- YOU CLEARLY SPEAK TWO LANGUAGES.  ARE YOU

11   CONFIDENT TO HEAR WITNESSES IN ENGLISH?

12        **PROSPECTIVE JUROR IN:**  YES, I AM CONFIDENT.

13        **MS. SILBERT:**  THANK YOU.

14        **MS. CHAN:**  MS. FRIED?

15        **PROSPECTIVE JUROR FRIED:**  YES.

16        **MS. CHAN:**  DO YOU OR ANYBODY CLOSE TO YOU KNOW OF

17   ANY OFFICERS, SPECIAL AGENTS, OR EMPLOYEES OF THE FBI OR IRS?

18        **PROSPECTIVE JUROR FRIED:**  NO.

19        **MS. CHAN:**  HAVE YOU WORKED AS A LAW ENFORCEMENT

20   OFFICER?

21        **PROSPECTIVE JUROR FRIED:**  NO.

22        **MS. CHAN:**  ANYBODY CLOSE TO YOU?

23        **PROSPECTIVE JUROR FRIED:**  NO.

24        **MS. CHAN:**  DO YOU THINK THAT A LAW ENFORCEMENT

25   OFFICER IS EITHER MORE LIKELY OR LESS LIKELY TO TELL THE TRUTH

1    **MS. SILBERT:**  MR. HEENEY, JUST ONE CLARIFICATION.

2        THE PRIOR FAILURE TO FILE TAXES, WAS THAT A CRIMINAL

3    CASE AGAINST YOU OR DID THE IRS JUST COME AFTER YOU FOR THE

4    BACK MONEY THAT YOU OWED?

5        **PROSPECTIVE JUROR HEENEY:**  THEY CONTACTED ME AND

6    TOLD ME THAT IF I FILED -- I CONTACTED THEM AND I FILED AND IT

7    WENT AWAY.

8        **MS. SILBERT:**  THERE WAS NO FURTHER STEP?

9        **PROSPECTIVE JUROR HEENEY:**  NO.

10        **MS. SILBERT:**  THANK YOU.

11        **THE COURT:**  WE ARE GOING TO TAKE -- I AM GOING TO

12    ASK YOU TO TAKE A HALF AN HOUR BREAK.  AND IF YOU WOULD LIKE,

13    YOU CAN GET A SANDWICH OR WHATEVER.  AND THEN I AM GOING TO ASK

14    YOU TO COME BACK AT QUARTER TO TWO.  I HOPE AT THAT TIME I MAY

15    BE ABLE TO SIMPLY ANNOUNCE WHICH OF THE 14 OF YOU WILL BE

16    CHOSEN TO SERVE AS JURORS, AND I AM HOPING I WILL BE ABLE TO

17    EXCUSE THE REST OF YOU.

18        HOWEVER, I MAY HAVE TO ASK SOME OF YOU BEYOND THE 14

19    TO COME BACK TOMORROW.  SO WE WILL SEE WHAT WE CAN DO IN THE

20    HALF HOUR.  I WILL HAVE TO ASK YOU TO LEAVE.  AND WHEN YOU COME

21    BACK, IF IT TAKES US A LITTLE -- EXCUSE ME, NOT QUITE YET.

22        EXCUSE ME.  LADIES AND GENTLEMEN?  LADIES AND

23    GENTLEMEN?  EXCUSE ME.  I MEANT WHEN I FINISHED SPEAKING I

24    WOULD BE ASKING YOU TO LEAVE.

25        AND WHEN YOU COME BACK, YOU MAY FIND THE DOOR

1            **MR. BLANK:**  PLUS.

2            **THE COURT:**  -- ONE MORE FOR TWO ALTERNATES.

3            **MR. BLANK:**  EACH.

4            **THE COURT:**  I THINK THAT'S HOW IT GOES.

5            **MS. CHAN:**  YES.

6            **MS. SILBERT:**  YES.

7            **THE COURT:**  AND I'D KIND OF LIKE TO HAVE THREE

8    ALTERNATES, BUT THEN I WOULD HAVE TO HAVE FOUR CHALLENGES AND I

9    MIGHT RUN OUT, SO I MIGHT JUST, DEPENDING ON HOW LOOSE YOU ARE

10   WITH YOUR CHALLENGES, WE MIGHT GO WITH 14 INSTEAD OF 15.

11           **MR. BLANK:**  VERY GOOD.

12           THANK YOU, YOUR HONOR.

13           **MS. CHAN:**  THANK YOU YOUR HONOR.

14                   (RECESS TAKEN AT 1:15 P.M.)

15                  (PROCEEDINGS RESUMED AT 1:30 P.M.)

16           **THE COURT:**  ANY FOR CAUSE CHALLENGES?

17           **MR. BLANK:**  YES, YOUR HONOR, WE HAVE A FEW.

18           YOUR HONOR, NUMBER 13, MS. MANEJA, THE STROKE

19   VICTIM.  SHE SAID SHE DOES HAVE SOME DIFFICULTY WITH HER

20   COMPREHENSION AND ALSO SOUNDS LIKE SHE HAS SOME MEDICAL

21   APPOINTMENTS AS WELL.

22           **MR. DAVIS:**  OUR POSITION IS SHE SOUNDED PERFECTLY

23   LUCID TO US AND I THINK SHE WAS PERFECTLY FINE.

24           **THE COURT:**  I DID, TOO.  I THOUGHT SHE DIDN'T WANT

25   TO BE ON THE JURY.

1              MR. BLANK: WE'LL SUBMIT.

2          THE NEXT ONE IS TOLOSA. THIS IS THE ONE WHO'S

3    FATHER IS THE CSI OFFICER. HE REPEATEDLY SAID HE COULD NOT BE

4    FAIR. HE SAID THAT --

5              THE COURT: I THINK HE'S SORT OF AN EQUAL

6    OPPORTUNITY CAUSE CHALLENGE. YOU DON'T --

7              MR. DAVIS: WE STIPULATE.

8              MR. BLANK: OKAY.

9          MS. CHENG SAID SHE SPEAKS CHINESE AT WORK, AT HOME,

10   IN HER NEIGHBORHOOD, LIMITED ENGLISH.

11             THE COURT: CHENG?

12             MR. BLANK: NUMBER 21.

13             THE COURT: YES. SHE WAS -- OF THE LANGUAGE

14   PROBLEMS, SHE WAS THE WORST AND I THINK THAT SHE SHOULD BE

15   EXCUSED.

16             MR. DAVIS: WE AGREE.

17             MR. BLANK: WE JUST HAVE ONE MORE THEN.

18         MS. CHAN ALSO NOT NATIVE ENGLISH SPEAKER. SHE'S THE

19   ONE WHO IS THE ACCOUNTANT FOR THE DA. ALTHOUGH HER ENGLISH WAS

20   BETTER, SHE DID SAY THAT SHE DID NOT HAVE CONFIDENCE IN HER

21   ABILITY TO SPEAK AND UNDERSTAND ENGLISH.

22             THE COURT: SHE WAS ANOTHER CASE OF NOT HAVING

23   CONFIDENCE IN HER DESIRE TO BE A JUROR BUT I THINK HER ENGLISH

24   IS FINE.

25             MR. DAVIS: WE AGREE.

1          **MR. BLANK:**  SUBMITTED, YOUR HONOR.  THOSE ARE ALL

2     OUR CAUSE CHALLENGES.

3          **MR. DAVIS:**  THE ONLY ONE WE WOULD ADD, YOUR HONOR,

4     IS MS. WARREN.  SHE WAS THE OCCUPATIONAL THERAPIST WITH THE

5     FINANCIAL HARDSHIP BASED ON THE FACT THAT SHE COULDN'T GET PAID

6     BECAUSE SHE WAS A PER DIEM EMPLOYEE.

7          **MS. SILBERT:**  THE ONE AT MILLS?

8          **THE COURT:**  THERE ARE A FEW OTHER HARDSHIPS I AM

9     GOING TO GRANT AND SHE IS ONE OF THEM.

10          **MR. DAVIS:**  I THOUGHT SHE WAS DESERVING.

11          **THE COURT:**  I ALSO --

12          **MR. BLANK:**  THAT WAS NUMBER 31, CORRECT, MS. WARREN?

13          **MS. CHAN:**  YES.

14          **THE COURT:**  I ALSO THOUGHT I SHOULD EXCUSE

15     MR. LARINS.  HE'S EARLY ON.  NOT ONLY BECAUSE HE DOESN'T GET

16     JURY PAY, BUT I THOUGHT HE WAS KIND OF AN ODD PERSON.

17          **MR. DAVIS:**  ARE YOU TALKING ABOUT NUMBER SIX, YOUR

18     HONOR, LARKINS?

19          **THE COURT:**  YES.  IS THAT HIS NAME LARKINS?

20          **MR. BLANK:**  I THINK IT IS LARINS, YOUR HONOR.

21          **MS. SILBERT:**  HE WROTE LARINS, NUMBER SIX.

22          **THE COURT:**  SO HE DOESN'T KNOW HOW TO --

23          **MR. DAVIS:**  WE WOULD STIPULATE TO THAT ONE.

24          **MR. BLANK:**  NO OBJECTION, YOUR HONOR.

25          **THE COURT:**  THEN I'D KIND OF LIKE TO EXCUSE

1      **MR. DAVIS:**  THE COURT EARLIER AT THE LAST BREAK

2  INDICATED IT WAS INCLINED TO EXCUSE NUMBER ONE, MR. WONG, AND

3  FIVE, MR. MIRTO.  IS THE COURT DOING THAT FOR CAUSE?

4            **THE COURT:**  YES.

5            **MR. DAVIS:**  BOTH OF THOSE?

6            **THE COURT:**  YES.

7            **MR. DAVIS:**  THANK YOU.

8            **THE COURT:**  SO, WHO HAS THE FIRST CHALLENGE,

9  SHEILAH?

10           **THE CLERK:**  GOVERNMENT.

11           **MR. BLANK:**  THEY ONLY HAVE SIX?

12           **THE CLERK:**  GOVERNMENT HAS NUMBER ONE.

13           **MR. DAVIS:**  SORRY.

14           **THE COURT:**  PEREMPTORY?

15           **MR. DAVIS:**  PEREMPTORY WOULD BE MR. HEENEY, THAT'S

16  JUROR NUMBER 43, YOUR HONOR.

17           ARE YOU PASSING THE SHEET?

18           **THE CLERK:**  I WILL TELL YOU WHO IS NEXT.

19           SO, WE HAVE THE DEFENDANT.

20           **MR. BLANK:**  NUMBER 9, MS. GARGALIKIS.

21           **THE COURT:**  SHEILAH?  JUST TELL THEM WHOSE TURN IT

22  IS.

23           **THE CLERK:**  GOVERNMENT.

24           **MR. DAVIS:**  GILLILAND, JUROR NUMBER 40, YOUR HONOR.

25           **MR. BLANK:**  40, FOUR ZERO?

1          **MR. DAVIS:**  YES.

2          **MR. BLANK:**  OUR NEXT WOULD BE OMALLEY, YOUR HONOR,

3    NUMBER 12.

4          **THE CLERK:**  YOU GET TWO NOW.

5          **MR. BLANK:**  THAT IS WHAT IS SO FUN.

6          HOM, NUMBER 19.

7          **THE CLERK:**  THE GOVERNMENT?

8          **MR. DAVIS:**  COON, JUROR COON, NUMBER 36.

9          **THE CLERK:**  THE DEFENSE GETS TWO.

10         **MR. BLANK:**  YOUR HONOR, BENSON NUMBER 3.

11         **MS. CHAN:**  I AM SORRY?

12         **MR. BLANK:**  BENSON, NUMBER 3.

13         NUMBER 29, CHAN.

14         **THE CLERK:**  GOVERNMENT GETS ONE.

15         **MS. CHAN:**  BUCHANAN-ABBOTT, NUMBER 18.

16         **THE CLERK:**  THE DEFENSE GETS TWO.

17         **MR. BLANK:**  SPEED, NUMBER 17, ACOSTA NUMBER 23.

18         **THE CLERK:**  GOVERNMENT ONE?

19         **MR. DAVIS:**  MAY WE HAVE ONE MOMENT, YOUR HONOR.

20         **THE COURT:**  YES.

21         (PAUSE IN THE PROCEEDINGS.)

22         **MR. DAVIS:**  JUROR FOWLER, YOUR HONOR, NUMBER 15.

23         **THE CLERK:**  DEFENSE TWO.

24         **MR. BLANK:**  YOUR HONOR, MANEJA, NUMBER 13.  LET'S

25    TAKE LUI, NUMBER 24.

1    **MR. DAVIS:**  MAY WE HAVE ONE MOMENT, YOUR HONOR?

2    **THE COURT:**  YES.

3    (PAUSE IN THE PROCEEDINGS.)

4    **MR. BLANK:**  HOW MANY DO I HAVE LEFT?

5    **THE CLERK:**  ONE AND ONE.

6    **THE COURT:**  I'M SORRY, DID YOU SAY LUI?

7    **MR. BLANK:**  I DID.  24, YOUR HONOR.

8    **THE COURT:**  L-U-I?

9    **MS. SILBERT:**  NUMBER 24.

10   **THE COURT:**  WE STILL HAVE THE WOMAN WITH THE KNEE

11   PROBLEMS.

12   **MR. DAVIS:**  I AM SORRY?

13   **THE COURT:**  MS. ALBRIGHT.  I DIDN'T WANT TO EXCUSE

14   HER, BUT SHE'S THE ONE WHOSE DOCTOR SAID SHE HAD KNEE PROBLEMS

15   AND SHE SHOULDN'T SERVE.

16   I FELT LIKE SHE COULD SERVE, BUT THE DOCTOR SAID SHE

17   COULDN'T.  DEGENERATIVE KNEE PROBLEMS.  THERE'S SOMEBODY UP IN

18   NAPA, WHICH IS KIND OF A LONG WAY.

19   **MR. BLANK:**  WE WILL STIPULATE IF THE COURT WANTS TO

20   GIVE HER A MEDICAL EXCUSE.

21   **THE COURT:**  NO, BECAUSE I DON'T HAVE ENOUGH.  I AM

22   THINKING IF SOMEBODY HAS AN EXTRA CHALLENGE THEY DON'T NEED.

23   **MR. DAVIS:**  SORRY FOR THE DELAY.

24   **THE COURT:**  ACTUALLY, I SEEM TO HAVE PLENTY OF

25   JURORS.  I MISCOUNTED SOMEHOW.

1    **MR. BLANK:**  WE THOUGHT THE COURT MIGHT STRIKE MORE

2    FOR CAUSE.  THE COURT DID NOT, SO THERE IS PLENTY.  THE COURT

3    CAN CERTAINLY LET MS. ALBRIGHT GO.

4    **THE COURT:**  I DON'T KNOW WHAT I DID WRONG.  I HAVE A

5    LOT MORE PEOPLE.

6    **MR. BLANK:**  YOUR HONOR WAS BEING THOROUGH.

7    **MS. SILBERT:**  IT WAS THE LACK OF LUNCH.

8    **THE COURT:**  YOU KNOW, MR. DAVIS, BEFORE YOU EXERCISE

9    YOUR LAST PEREMPTORY, I HAVE MORE PEOPLE THAN I THOUGHT.  AND I

10   AM NOW INCLINED TO BE A LITTLE BIT LOOSER, AND I WOULD LIKE TO

11   LET MS. ALBRIGHT GO.

12   I MIGHT EVEN LIKE TO LET MR. LE GO WITH HIS SLEEP

13   APNEA.  I THOUGHT THINGS WERE A LOT TIGHTER THAN THEY WERE, SO

14   I WAS BEING STINGY.

15   **MR. BLANK:**  WE WOULD STIPULATE TO BOTH OF THOSE,

16   YOUR HONOR.

17   **THE COURT:**  I HAVE PLENTY.  I WILL LET BOTH OF THOSE

18   GO.

19   **MR. DAVIS:**  VERY WELL, YOUR HONOR.

20   MAY WE HAVE ANOTHER MOMENT?

21   **THE COURT:**  SURE.

22   (PAUSE IN THE PROCEEDINGS.)

23   **MR. DAVIS:**  THANK YOU VERY MUCH.

24   YOUR HONOR, OUR LAST CHALLENGE WOULD BE JUROR HICKS,

25   NUMBER 27.

```
 1              THE CLERK:  DEFENDANT HAS ONE.

 2              MR. BLANK:  NUMBER 4, I AM NOT GOING TO BE ABLE TO

 3    PRONOUNCE THIS RIGHT, YEMANEBREHAN.

 4              THE COURT:  OKAY.

 5              MR. BLANK:  DID I ALMOST GET IT RIGHT?

 6              THE COURT:  YEMANEBREHAN.

 7              MR. BLANK:  OKAY.

 8              THE COURT:  SO HER.

 9              OKAY.  SO THAT MEANS THAT OUR 12 ARE ONE, LEE-LUM.

10    TWO, TONG.  THREE, RING.  FOUR, MS. SCHNEIDER.  FIVE, COX.

11    SIX, GARROW.  SEVEN, RUIZ.  EIGHT, SMITH.  NINE, ALBANO.  TEN,

12    GARRIZ.  ELEVEN, GODINEZ.  TWELVE, HARTWELL.

13              MR. DAVIS:  YOUR HONOR, DID YOU SAY LUM, NUMBER ONE?

14              THE COURT:  LEE-LUM.

15              MR. DAVIS:  NUMBER TWO IS TONG, YOUR HONOR?

16              THE COURT:  YES.

17              MR. DAVIS:  THANK YOU.

18              THE COURT:  THAT LEAVES US WITH A POOL OF FIVE

19    POTENTIAL ALTERNATES.

20              MR. BLANK:  ONE STRIKE EACH, YOUR HONOR?

21              THE COURT:  I GUESS.

22              THE CLERK:  GOVERNMENT --

23              THE COURT:  I WILL GIVE YOU ONE STRIKE EACH.  THAT

24    WILL LEAVE US WITH THREE.  IF SOMEBODY WANTS TO STRIKE ONE OF

25    THOSE THREE, I WILL ALLOW IT, BUT IF NOBODY WANTS TO STRIKE ONE
```

1    OF THOSE THREE I'LL KEEP ALL THREE, WHICH WOULD BE SLIGHTLY

2    SAFER.

3              **MR. DAVIS:**  VERY WELL.

4              **THE COURT:**  WHO IS YOUR FIRST ALTERNATE CHALLENGE?

5              **MR. DAVIS:**  WHO ARE THEY?  SORRY.

6              **THE COURT:**  THE ALTERNATES ARE IN --

7              **MR. DAVIS:**  YES.

8              **THE COURT:**  FRIED, BUTLER, CRANE AND --

9              **MR. DAVIS:**  I AM SORRY, BUTLER?

10             **THE COURT:**  CRANE.

11             **MR. DAVIS:**  CRANE.

12             **THE COURT:**  GRINTON.

13             (PAUSE IN THE PROCEEDINGS.)

14             **MR. DAVIS:**  FRIED, YOUR HONOR.

15             **MR. BLANK:**  THAT WAS NUMBER 38.  WE WOULD STRIKE

16   NUMBER 37, IN.

17             **THE COURT:**  OKAY.

18             **MR. BLANK:**  YOUR HONOR, WE DO HAVE -- WE WOULD LIKE

19   TO EXERCISE A STRIKE ON BUTLER IF THE COURT IS GIVING US THAT

20   OPTION.  THAT WOULD BE LEAVE US WITH TWO.

21             **THE COURT:**  OKAY.  SO THE ALTERNATES ARE CRANE AND

22   GRINTON.

23             SHEILAH, YOU CAN BRING THEM IN.

24             **MR. DAVIS:**  THANK YOU VERY MUCH, YOUR HONOR.

25             **MR. BLANK:**  THANK YOU.

1  SELECTED TO SERVE AS THE 12 JURORS AND TWO ALTERNATES ON THE

2  CASE.  IF I READ YOUR NAME, PLEASE STAND AND I WILL SWEAR YOU

3  IN AND THEN AFTER THAT I WILL BE EXCUSING THE REST OF YOU TO GO

4  BACK TO THE JURY ROOM.

5          THE JURORS WILL BE:  MS. LEE-LUM, MR. TONG,

6  MS. RING, MS. SCHNEIDER, MS. COX, MR. GARROW, MR. RUIZ,

7  MR. SMITH, MS. ALBANO, MS. GARRIZ, MS. GODINEZ, MR. HARTWELL.

8          AND OUR TWO ALTERNATES WHO WILL BE NEEDED TO ATTEND

9  IS MS. CRANE.  SHE BACK THERE?  AND MR. GRINTON.

10          SO WE WILL SWEAR FIRST THE JURORS AND THEN THE

11  ALTERNATES.  SO IF EACH OF THE JURORS WOULD PLEASE RAISE YOUR

12  RIGHT HAND.

13          (JURORS SWORN.)

14          **JURORS:**  I DO.

15          **THE COURT:**  TWO ALTERNATES RAISE YOUR HAND.  WE HAVE

16  A SPECIAL OATH FOR YOU HERE.

17          (ALTERNATE JURORS SWORN.)

18          **ALTERNATE JURORS:**  YES.

19          **THE COURT:**  IF YOU COULD JUST REMAIN STANDING FOR A

20  MINUTE WE WILL RE-SEAT YOU IN THE JURY BOX AS SOON AS I THANK

21  ALL THE REST OF YOU FOR COMING.

22          AS I MENTIONED, MANY PEOPLE DO TRY TO EVADE THEIR

23  JURY DUTY AND I REALLY APPRECIATE IT AND THE PARTIES APPRECIATE

24  ALL OF YOU BEING WILLING TO COME IN AND SIT FOR THE VOIR DIRE

25  PROCESS AND POTENTIALLY BE SELECTED.